In re **DE LAURENTIIS ENTERTAINMENT GROUP, INC.**, a Delaware corporation, and Affiliates, Debtors.

The **OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS**, Appellant,

v.

**PAINEWEBBER INC.**, Appellee.

No. CV 90–3663 WJR.
Bankruptcy No. LA–88–17251–AA.

United States District Court,
C.D. California.

Feb. 22, 1991.

---

**306**

Richard T. Peters, Perry L. Landsberg, Thomas H. Patterson, Sidley & Austin, Los Angeles, Cal., for Official Committee of Creditors Holding Unsecured Claims.

Phillip L. Bosl, Donald J. Schmid, Gibson, Dunn & Crutcher, Los Angeles, Cal., for PaineWebber Inc.

Joseph A. Eisenberg, Peter S. Fishman, Werner Disse, Levene & Eisenberg, Los Angeles, Cal., for debtors.

## MEMORANDUM DECISION AND ORDER

REA, District Judge.

The Court has reviewed and considered the moving and opposing papers, the record of the case, the arguments of counsel, the applicable authorities and good cause appearing therefore:

IT IS HEREBY ORDERED that PaineWebber Incorporated's litigation expense claim against the Debtor's Chapter 11 estate is subordinated under 11 U.S.C. § 510(b) to the claims of all other general unsecured creditors.

The issue presented on appeal is whether the Bankruptcy Court erred in finding that PaineWebber's litigation expense claim against a Chapter 11 estate should not be subordinated under 11 U.S.C. Section 510(b) to the claims of all other general unsecured creditors. The Court reverses the order granting PaineWebber's Bankruptcy Rule 3013 motion.

## BACKGROUND

The Official Committee of Creditors Holding Unsecured Claims ("Committee") in the Chapter 11 case of De Laurentiis Entertainment Group, Inc. ("Debtor") has appealed a May 9, 1990 Order of the Bankruptcy Court ("Order"). The Order granted a motion brought by PaineWebber Incorporated ("PaineWebber") pursuant to Bankruptcy Rule 3013, and thus, determined that PaineWebber's claim for reimbursement of attorneys' fees incurred in the defense of actions brought by securities holders in connection with the public offerings of stock was entitled to be classified with general unsecured claims.

PaineWebber had entered into a series of underwriting agreements with the Debtor in connection with securities offerings. The underwriting agreements included promises by the debtor that it would reimburse PaineWebber for any reasonable litigation expenses it incurred should it be sued in connection with those offerings. PaineWebber was subsequently sued by securities holders on the theory that the prospectuses and registration statements filed

in connection with the public offerings contained material misstatements of fact. PaineWebber claims to have incurred over $800,000 in attorneys' fees in defending these actions.

PaineWebber asserted a contract-based claim for these expenses against the Debtor within the time period allowed.

In March 1990, the Debtor filed its proposed plan of reorganization which subordinated PaineWebber's litigation expense claims pursuant to Bankruptcy Code § 510(b). As a result of the subordinated position, PaineWebber's claims would receive no distribution.

The Debtors' Plan classifies groups of creditors in separate classes and specifies the treatment of such classes of creditors. Class 8 is entitled "General Unsecured" claims. The Plan provides that Class 8 creditors receive a distribution on account of their claims equal to the pro rata share of a fund consisting of cash and reorganization securities.

Class 9 is entitled "Securities Claims" and consists of two sub-classes: (1) Class 9–A, containing claims for damages or rescission arising out of the sale of a security of the Debtor; and (2) Class 9–B, containing claims for reimbursement, contribution, or indemnity on account of a Class 9–A claim. The Plan, as modified by the Confirmation Order, provides that Class 9–A and 9–B creditors receive no distribution on account of their claims.

PaineWebber filed a motion pursuant to Bankruptcy Rule 3013 to have its litigation expense claim classified as a general unsecured claim, and thereby, entitle it to some pro rata share of the assets remaining in the estate. Both the Debtor and the Committee opposed PaineWebber's motion. Following briefing and oral argument, Bankruptcy Judge Ahart granted PaineWebber's motion and classified PaineWebber's litigation expense claim as a Class 8 General Unsecured claim.

The Committee and the Debtor filed notices of appeal from the Bankruptcy Court's May 9, 1990 Order. The Debtor has not pursued the appeal any further.

## DISCUSSION

### I. *Jurisdiction*

■ 28 U.S.C. § 158(a) authorizes district courts to hear appeals from final bankruptcy orders or from interlocutory bankruptcy orders if the district court grants leave to appeal. The Court exercises its discretion in granting leave to appeal as a successful appeal avoids the need for further proceedings relating to PaineWebber's pro rata share as a Class 8 creditor under the plan for distribution.

### II. *Standard of Review*

Both parties agree that the issue raised by this appeal is a question of law entitled to de novo review. *Pizza of Hawaii v. Shakey's, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985).

### III. *Subordination under 11 U.S.C. § 510(b)*

The Committee's argument on appeal is that the plain language of Section 510(b) requires PaineWebber's claim to be subordinated to the level of the claims of the holders of securities. Section 510(b) of the Bankruptcy Code provides as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of a security, or for contribution or reimbursement allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

The Committee argues that the Bankruptcy Court erred in holding that PaineWebber's claim is not a claim for reimbursement or contribution within the scope of Section 510(b).

#### A. *Language of Section 510(b)*

■ In construing the meaning of Section 510(b), the Court begins with the lan-

guage of the statute itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citations omitted). If the Court finds the language of the statute plain, the Court's inquiry should end. *Id.* An exception to the plain meaning rule exists in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Id.* (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). In such a case, the intent of Congress controls in construing the meaning of a statute. Accordingly, legislative history and policy arguments become relevant in discerning congressional intent. *Id.*

■ The Committee argues that PaineWebber's claim for attorneys' fees pursuant to its indemnification agreement with the Debtor is a claim for reimbursement under Section 510(b). Reimbursement by definition includes indemnification, and indemnification naturally includes recovery of attorneys' fees. Hence, PaineWebber's claim qualifies as one for reimbursement under the plain language of Section 510(b).

PaineWebber argues that the language of Section 510(b) does not mandate subordination of litigation expense claims. First, PaineWebber states that Section 510(b) does not mention litigation expense claims or even attorneys' fees claims. Therefore, the language must be interpreted by ascertaining the intent of Congress. *In re Arizona Appetito's Stores, Inc.,* 893 F.2d 216, 219 (9th Cir.1990). PaineWebber asserts that the 1984 Amendment language supports the litigation expense/liability claim distinction drawn by the court in *Christian Life Center Litigation Defense Comm. v. Silva,* 821 F.2d 1370 (9th Cir.1987).

PaineWebber focuses on the use of the words "on account of" as revealing Congressional intent to subordinate only those reimbursement or contribution claims which would be passed on to equity holders asserting damage or rescission claims. If Congress had meant to include litigation expense claims, Congress would have used the words "associated with," "related to,"

"resulting from," or "arising out of" to designate those reimbursement claims that it intended to subordinate.

Rather, PaineWebber argues that "on account of" connotes the partial payment or satisfaction of a specific debt and cites to Black's Law Dictionary. As such, PaineWebber concludes that Congress used "on account of" to refer specifically to a debt owed to the equityholders. Litigation expenses are not such a debt, but rather, encompass the debts owed to attorneys, experts, and court costs. Black's defines "on account", without "of", as "[i]n part payment; in partial satisfaction of an account." The Court declines to adopt the novel interpretation proposed by PaineWebber and interprets "on account of" consistent with its meaning in normal usage.

The Court concludes that the plain language of Section 510(b) includes claims for indemnification of litigation expenses. Nothing in the language of Section 510(b) supports drawing a distinction between claims for reimbursement of litigation expenses from those of liability expenses incurred on account of a claim arising from rescission of a purchase or sale of a security of the debtor. Thus, PaineWebber has the burden of showing that subordination of an underwriter's claim for indemnification of attorneys' fees in this case is "demonstrably at odds with the intention of its drafters" and not within the intended scope of Section 510(b). *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

B. *Underlying Policy*

The purpose of Section 510(b) as originally enacted was to prevent equityholders from converting their interests into higher priority general unsecured creditors claims by asserting damages or rescission claims. *Christian Life Center Litigation Defense Comm. v. Silva,* 821 F.2d 1370, 1375 (9th Cir.1987).

Section 510(b) was amended in 1984 by adding a provision for "claims for reimbursement or contribution allowed under section 502 on account of such a claim." Bankruptcy Amendments and Federal

Judgeship Act of 1984, Pub.L. No. 98–353, § 451, 98 Stat. 333, 375. There is no legislative history surrounding the 1984 Amendment.

PaineWebber asserts that the policy underlying Section 510(b) supports its position that the 1984 amendment to Section 510(b) relating to claims for reimbursement applies only to claims for reimbursement of liability, and not litigation expenses. PaineWebber relies on *Christian Life Center Litigation Defense Comm. v. Silva,* 821 F.2d 1370 (9th Cir.1987) as supporting the position that the Ninth Circuit has distinguished litigation liability claims from litigation expense claims.

In *Christian Life,* the court addressed whether Section 510(b), prior to the 1984 amendments, required the subordination of officers' indemnity claims for litigation costs. Certain officers of the debtor incurred legal expenses in defense of an action for rescission of the sale of unregistered securities under the California Corporations Code. The attorneys representing the defendant officers filed a claim for indemnification from the estate, asserting, in part, that section 317 of the California Corporations Code provided for such claims. The creditors' committee and certain of the investors argued that the claim for fees should be subordinated pursuant to Section 510(b). The court held that the indemnity claims for litigation costs did not fall within the scope of Section 510(b).

> The officers' indemnity claims are for litigation costs, not for reimbursement of liability owed to the holders of the securities. The argument that the security holder may circuitously elevate his claim to a general unsecured claim through indemnity is relevant only to indemnity of liability. The security holder recovers nothing from the officers when the latter are merely indemnified for defense costs. Thus section 510(b)—at least prior to the 1984 amendments—does not require subordination of indemnity claims for defense costs. The blanket order subordinating all indemnity claims to general unsecured claims, even those for defense costs, is not proper under that section.

*Christian Life,* 821 F.2d at 1376. PaineWebber emphasizes that the Ninth Circuit's statements and the rationale underlying those statements are still valid even after the 1984 amendment. The important point is that the reimbursement of litigation expenses are fundamentally different from claims for reimbursement of liability losses because only reimbursements of liability losses are passed on to equityholders.

In reaching its conclusion in *Christian Life,* the Court relied on three underlying policy considerations of Section 510(b). One, "failure to subordinate the interests of shareholders to those of unsecured creditors would defeat the reasonable expectations of both." 821 F.2d at 1375. Two, "[g]eneral creditors rely on the equity cushion created by the investment of shareholders and expect priority in bankruptcy." *Id.* And three, "[s]hareholders in turn bargain for potential profit in exchange for expected subordination of their interests in bankruptcy." *Id.* (citations omitted).

The Committee distinguishes its case from that of *Christian Life* in that the officers were not purchasers of the securities in *Christian Life.* In contrast, the present case involves underwriters who have purchased stock. The Committee's position is that PaineWebber is a purchaser of stock, and therefore, should be considered an equityholder. PaineWebber's position is that it is seeking indemnification pursuant to its contractual rights and that its role as an equityholder is merely incidental to its true role in the transaction.

Both parties have presented strong policy reasons to support their positions. As underwriters, PaineWebber does not fall within the scope of either a purely non-purchaser of stock or a purchaser of stock, but rather is a highbred. It is unclear how Congress intended underwriters to be treated under Section 510(b). It is PaineWebber, however, that bears that burden of showing how interpreting Section 510(b) consistent with the plain language of the statute would subvert Congressional intent. Since both parties have presented equally compelling rationale to support their positions, the Court cannot say that

enforcing the plain language of Section 510(b) would "produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citations omitted).

The *Christian Life* court's rationale emphasized the fact that the security holders would not be indirectly benefited if the officers were indemnified for defense costs. An equally important policy consideration behind Section 510(b), emphasized by the Ninth Circuit in *In re Holiday Mart, Inc.*, 715 F.2d 430, 433 (1983), is that it would not be fair to shift the risk of unlawfulness in the issuance of securities from the stockholders to the creditors. In the case presented before the Court, there is no danger that the security holders will be indirectly benefited by subordinating the claims for litigation expenses. Nevertheless, the general unsecured creditors will bear some risk associated with the unlawful issuance of securities by allowing PaineWebber to receive reimbursement for its litigation expense claim on par with the general unsecured creditors. Given that the fair allocation of risk is one of the underlying policy considerations of Section 510(b),[1] underwriters are in a better position than the general unsecured creditors to evaluate the risks associated with the issuance of stock and take the appropriate steps to protect themselves.

Additional policy considerations exist to support the Court's conclusion that a litigation liability versus expense distinction should not be read into the language of Section 510(b).

An attorneys' fees exception to Section 510(b) could swallow the rule because such an interpretation could extend to all attorneys' fee claims and not just those of the defendants. For example, in cases where plaintiffs' counsel is paid out of a fund created for a class of plaintiffs, counsel could argue that the attorneys' fees portion of recovery should not be subordinated under Section 510(b).

Additionally, the failure to subordinate attorneys' fees may eliminate an incentive to settle securities cases. The Committee highlights the fact that underwriters are not permitted to pass on their damage claims that result from litigation surrounding the issued securities. If PaineWebber settles the case by agreeing to pay some damages, its indemnity claim against the debtor is subordinated. However, under PaineWebber's theory, if PaineWebber continues to litigate, its litigation costs are subsidized by the unsecured creditors. Thus, PaineWebber's interpretation of the statute could act as a disincentive to settlement.

## IV. *Conclusion*

The Court finds that Section 510(b) governs PaineWebber's claim for litigation expenses. In construing the provisions of Section 510(b), the Court concludes that PaineWebber's claim for litigation expenses incurred in defending an action brought by securities holders in connection with the public offerings of stock is subordinated to the claims of the general unsecured creditors. The Court is not persuaded that the subordination of an underwriter's claim to indemnification for attorneys' fees would conflict with the intent of the drafters of Section 510(b). Accordingly, the Court finds the language of the statute controlling and reverses the Bankruptcy Court's order granting PaineWebber's Rule 3013 motion.

---

**1.** *See* Slain and Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Be-* *tween Security Holders and the Issuer's Creditors,* 48 N.Y.U. L.Rev. 261 (1973).