In re TS INDUSTRIES, INC., a Nevada corporation, Debtor.

In re THERMAL SYSTEMS, INC., a Utah corporation, Debtor.

In re THERMAL SYSTEMS OF UTAH, INC., a Utah corporation, Debtor.

Bankruptcy Nos. 89C–04919, 89C–04920 and 89C–04921.

United States Bankruptcy Court, D. Utah.

April 9, 1991.

Noel S. Hyde, Nielsen & Senior, Salt Lake City, Utah, for debtor.

R. Kimball Mosier, McKay, Burton & Thurman, Salt Lake City, Utah, Trustee.

Walker Kennedy, III, Woodbury, Jensen, Kesler & Swinton, Salt Lake City, Utah, for Official Unsecured Creditors Consol. Oversight Committee.

David E. Leta, Hansen, Jones & Leta, Salt Lake City, Utah, for Unsecured Creditors Committee of Thermal Systems.

Anna W. Drake, Allen, Nelson, Hardy & Evans, Salt Lake City, Utah, for Trustee.

## MEMORANDUM OPINION AND ORDER GRANTING NIELSEN & SENIOR'S FEE APPLICATION IN PART

GLEN E. CLARK, Chief Judge.

The matter before the court is the fee application of Nielsen & Senior ("N & S"), attorney for the consolidated debtors, T.S. Industries, Inc., Thermal Systems, Inc., and Thermal Systems of Utah, Inc. ("debtors"). Hearings were conducted on March 21, 1991, and April 5, 1991. Noel S. Hyde,

Esq. appeared on behalf of N & S. R.Kimball Mosier, Esq., Chapter 11 trustee ("trustee"), represented himself. Walker Kennedy, III, Esq. appeared on behalf of the Official Unsecured Creditors' Consolidated Oversight Committee. David E. Leta, Esq. appeared on behalf of the Unsecured Creditors' Committee of Thermal Systems, Inc. Anna W. Drake, Esq. appeared on behalf of Allen, Nelson, Hardy & Evans, Thomas H. Cadden, and Chapman, Fuller & Bollard, special counsel to the trustee.[1] Evidence was presented and arguments were made. The court having fully reviewed the application, the evidence presented, the arguments of counsel, and having made an independent review of the pertinent authorities, made the decision that N & S's application would be partially allowed. This memorandum opinion is rendered in conjunction with that ruling.

## BACKGROUND

On August 17, 1989, the debtors filed a petition seeking relief under Chapter 11 of the Bankruptcy Code.[2] At about that same time, N & S was appointed as the debtors' attorney. During the first year of the bankruptcy case, the debtors successfully opposed motions made by the United States Trustee and Official Unsecured Creditors' Consolidated Oversight Committee which sought the appointment of a Chapter 11 trustee. Shortly thereafter, however, the debtors stipulated with both of the creditors' committees to the appointment of a trustee. On October 19, 1990, the court approved that stipulation. On October 21, 1990, the court entered an order, submitted to it on the stipulation of the debtors and the creditors' committees, which provided for the substantive consolidation of the debtors' estates. On October 22, 1990, the court executed an order that had been submitted to it by the United States Trustee which appointed R. Kimball Moiser, Esq. as the Chapter 11 trustee. The court recently approved the employment of the trustee's

---

1. The court also had before it the fee applications of the parties represented by Ms. Drake. This memorandum opinion will not deal with its ruling on those applications.

2. 11 U.S.C. § 101 et seq. All future statutory references are to title 11 of the United States Code.

law firm, McKay, Burton & Thurman, as his attorney.

On the basis of previous fee applications that have been before the court, N & S has been awarded, as administrative expenses, fees and costs in the amount of $72,791.17 (First Interim Fee Application; Order docket # 376) and $94,912.64 (Second Interim Fee Application; Order docket # 759), for a total amount of $167,703.81. In those applications, N & S represented that it had spent the majority of its time initiating the case, dealing with claim analysis and litigation, in particular, the Bridgestone/Firestone claim, and working on proposed plans and disclosure statements.

On February 19, 1991, N & S submitted the present application which requests fees in the amount of $61,431.90 and costs in the amount of $6,111.05 for services that were rendered in the case from August 20, 1990, through and including January 20, 1991. Of the $61,431.90 of fees sought, $33,286.60 were incurred after the appointment of the trustee. The work performed by N & S both prior to and after the appointment of the trustee can be categorized as follows:

(1) Claims analysis, correspondence, and litigation;

(2) FORCO Agreement issues;

(3) Correspondence with non-trustee parties regarding administration;

(4) Correspondence with the trustee regarding administration;

(5) Deloitte & Touche fee application;

(6) Review of proposed disclosure statements and plans;

(7) Preparation of fee applications; and

(8) Reed Watkins bankruptcy issues.

In support of its application, N & S has presented claim objection summaries that it prepared (Exhibits A–B); an amended exhibit to its fee application which itemizes fees that have been incurred during the time period in question (Exhibit C); and a topical summary of the different types of services that it has rendered to the estate after the appointment of the trustee (Exhibit D). N & S has also represented that, while prior correspondence with the trustee

has been "less than optimal," it anticipates that future correspondence will improve.

The creditors' committees have objected to N & S's fee application alleging that the work that it has performed is duplicative of that of the trustee or has not been beneficial to the estate. At the hearings, the committees stated their objections for the record, but did not present evidence, allowing the court to make a decision based on their pleadings.

The trustee did not file an objection to the application. Nor did he make a motion to employ N & S as his special counsel *nunc pro tunc.* He did, however, proffer evidence to help the court in making its decision. That proffer indicated that after his appointment he did not request that N & S participate in the analysis and litigation of claims against the estate. Rather, he was informed by N & S that it intended to continue its claim analysis and litigation because, under the Code, any party in interest could make objections to a claim. The trustee further stated that he was kept apprised of the routine claim objections that had been filed by N & S, but that he had not received much correspondence on the substantive claim objections that had been filed. While he questioned the appropriateness of specific time entries, the trustee did not believe that N & S's work was duplicative of his efforts.

The court also notes that on March 21, 1991, it awarded the trustee fees and costs in the amount of $14,083.00. The court's re-review of that application indicates that he has spent his time on this case either analyzing the estate, working on claim analysis, reviewing FORCO Agreement issues, working on problems associated with the Deloitte & Touche fee application, or corresponding with numerous parties regarding the administration of the estate. Paragraph 5b of his fee application states: "Your applicant has met with debtors' attorneys and has investigated the status of claims against the estates. The trustee has been informed of all objections to claims and other actions with respect to claims that have been taken by debtors' attorneys."

## DISCUSSION

Section 330(a) provides, in relevant part, that:

After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, *to a professional person employed under section 327 or 1103 of this title*, or to the debtor's attorney—

> (1) reasonable compensation for actual, necessary services rendered by such ... attorney, ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
>
> (2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) & (2) (emphasis added).

■ Pursuant to § 503(b)(2), compensation and reimbursement awarded under § 330(a) are allowable, after notice and hearing, as administrative expenses. Discussing § 330(a), the court in *In re Jensen–Farley Pictures, Inc.* 47 B.R. 557 (Bankr. D.Utah 1985) stated that hours are not reasonably spent if they are excessive, or duplicative. Needless to say, duplicative hours are also not necessary. The burden of proof is on the fee applicant to show that it is entitled to the fees and costs that it has requested. *In re James Contracting Group, Inc.*, 120 B.R. 868, 872 (Bankr. N.D.Ohio 1990); *In re Stoecker*, 114 B.R. 965, 969 (Bankr.N.D.Ill.1990).

In this case, the court has become generally concerned with the administrative expenses that have been mounting. In reviewing N & S's fee application, the court has bifurcated the services into pre-trustee and post-trustee services. While certain of N & S's pre-trustee time entries are questionable under § 330(a), the court will put that issue aside until the end of the opinion so that it may deal with the more interesting issue of whether N & S's post-trustee services are compensable as administrative expenses. In examining the later issue,

the court must look at the considerations that are made when a trustee is appointed and the effect that such appointment has on the duties of the debtors' attorney.

### (i) *Post–Trustee Fees*

■ While it is normal for the debtor to remain in possession in a Chapter 11 case, § 1104(a) provides a means for the appointment of a trustee if it is warranted by the circumstances. The legislative history to § 1104(a) provides that "[t]he court may order appointment only if the protection afforded by a trustee is needed and the costs and expenses of a trustee would not be disproportionately higher than the value of the protection afforded." H.R.Rep. No. 595, 95th Cong., 1st Sess. 402 (1977) U.S. Code Cong. & Admin.News 1978, pp. 5787, 6357; *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr.S.D.N.Y. 1990).

In this case, the debtors, after having successfully opposed motions seeking the appointment of a trustee, stipulated with the creditors' committees to such an appointment, and the court, after notice and hearing, approved that stipulation. Given the above-mentioned policy of minimizing costs, it is unlikely that the court would have approved the stipulation had it known that the debtors and their professionals were planning to continue to play a large role in the administration of the estate.

Furthermore, once the trustee is appointed, he or she "is the representative of the estate." 11 U.S.C. § 323(a). Also, "[a] trustee appointed in a chapter 11 case is substituted automatically for the debtor in possession as a party in any pending action, proceeding, or matter." Bankruptcy Rule 2012(a). Thus, a trustee and a debtor in possession cannot co-exist. As one court has stated:

> [O]nce a trustee is appointed, the debtor-in-possession ceases to exist. 'Debtor-in-possession' as defined in 11 U.S.C. § 1101(1), 'means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case.' The trustee, upon approval of appointment, replaces the debtor-in-pos-

session in administering the assets of the estate and protecting the creditor's interests.

*In re Marker*, 100 B.R. 569, 570 (Bankr.N. D.Ala.1989); *see also In re NRG Resources, Inc.*, 64 B.R. 643 (W.D.La.1986); *In re Spencer*, 48 B.R. 168, 172 (Bankr.E. D.N.C.1985). Discussing § 1108, this court, in *In re Curlew Valley Associates*, 14 B.R. 506, 509 n. 5 (Bankr.D.Utah 1981), stated that the "[a]ppointment of a trustee ... ousts the debtor as manager of the estate...."

Section 1106 delineates that duties of the trustee. Subsection (a)(1) of that section specifically makes § 704 applicable to Chapter 11 trustees. Under § 704, the trustee, in relevant part, has a duty to examine proof of claims and object to the allowance of any claim that is improper, investigate the financial affairs of the debtor, and handle correspondence concerning the administration of the estate. 11 U.S.C. § 704(4), (5), and (7). Furthermore, § 1106(a)(5) requires the trustee, "as soon as practicable, [to] file a plan ..., file a report of why the trustee will not file a plan, or recommend conversion ... or dismissal of the case." As the new manager of the estate, it is imperative that the trustee exercise independent business judgment when executing its duties under § 1106. *Cf. Curlew Valley*, 14 B.R. at 506 (discussing the need for the trustee to operate the debtor's business without undue interference and using independent business judgment).

There are several cases that discuss the role of a debtor's attorney and the appropriateness of its fees after a trustee has been appointed. The cornerstone case is *In re NRG Resources, Inc.*, 64 B.R. 643 (W.D. La.1986). In that case, the district court vacated an order of the bankruptcy court and denied a debtor's attorneys' fee application because they had performed services for the estate without having been approved as special counsel to the appointed Chapter 11 trustee. In so holding, the court stated:

> The intent of the Bankruptcy Code seems crystal clear that just as a trustee replaces the debtor-in-possession for the purpose of administering the estate and operating its business, so it is that the trustee's attorney displaces the debtor's attorney in order that the *trustee* will have counsel and assistance in performing his fiduciary duties. There is no need for the debtor to have assistance performing those duties which are fully assumed by the trustee, and hence any 'debtor's attorneys' can serve no beneficial purpose for the estate *unless* they are characterized as attorneys of the trustee.

> .    .    .    .    .

> A trustee having been appointed, it is his duty to administer the estate and anyone participating in the performance of that duty must meet the requirements of 11 U.S.C. § 327. Of course, there nevertheless are services for which a debtor's attorney is entitled to compensation, such as that received for filing the petition, so long as they are rendered in the capacity of debtor's attorney and do not continue well beyond the time of the trustee's appointment.

> In any event, the issue of whether or not the debtor's attorney is allowed to continue to work for the benefit of the debtor's estate after the trustee has been appointed is not dispositive of the issue before the Court, as it is obvious that services performed by [the attorneys] in the case at bar were at the express direction of the trustee and therefore were most certainly performed in the capacity of trustee's attorneys, *not* of debtor's attorneys. The Bankruptcy Code certainly does not allow attorneys to change hats at their own whim in order that its specific requirements may be circumvented. [The attorneys] previously represented the debtor and thus section 327(e) of the Bankruptcy Code plainly prohibits them from generally representing the trustee. Having represented the debtor, [the attorneys] are eligible only to represent the trustee for a 'specified special purpose' for which the Court *must* grant prior approval.

*Id.* at 647–49 (emphasis in the original). The court went on to discuss the appropriateness of *nunc pro tunc* approval of the attorneys' employment as special counsel to the trustee and concluded that such appointment would not be appropriate given the fact that special circumstances did not exist.

Reasoning similar to that in *NRG Resources* has also been stated in the case of *In re Stoecker,* 114 B.R. 965 (Bankr.N.D. Ill.1990); *In re Marker,* 100 B.R. 569, 571 (Bankr.N.D.Ala.1989) (court held that any work that is a duty of the trustee is ultimately duplicative and fees related to such work should not be allowed as an administrative expense); *In re S & E Oil Co.,* 66 B.R. 6 (Bankr.W.D.La.1986); and *In re Spencer,* 48 B.R. 168 (Bankr.E.D.N.C. 1985).

Although harsh, the *NRG Resources* line of cases seem to be well reasoned for several reasons. First, the cases recognize that the debtor and the trustee are two very separate entities. Professionals who have been approved to represent the debtor cannot operate on behalf of the trustee unless they have been authorized by the court to do so for a special purpose pursuant to § 327(e). If the debtor's attorney has not been so appointed, services that it performs that are duties of the trustee are either: (1) authorized by the trustee and, therefore, non-compensable under § 330(a) because, like *NRG Resources,* it is acting as the trustee's attorney without having been employed as such under § 327(e); or (2) unauthorized by the trustee and, therefore, non-compensable under § 330(a) because such services will be presumed to be unreasonable and unnecessary as the attorney is interfering with the trustee's role as the manager of the estate. *See In re Marker,* 100 B.R. at 569.

Second, as alluded to above, the *NRG Resources* line of cases prevent the debtor from retaining managerial powers over the estate after the appointment of a trustee. Section 1104(a) provides that a court shall order a trustee "(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management ... or (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate...." *See generally In re Oklahoma Refining Co.,* 838 F.2d 1133 (10th Cir.1988). The appointment of a trustee is an extraordinary remedy as there is a strong presumption that the debtor should remain in possession absent a showing by clear and convincing evidence that grounds exist for the appointment of a trustee. *In re Ionosphere Clubs, Inc.,* 113 B.R. at 167–68; *In re Mako, Inc.,* 102 B.R. 809, 811–12 (Bankr.E. D.Okla.1988). This being so, it would be dangerous to set a precedent that allows for the appointment of a trustee and at the same time permits the jilted debtors' attorney, who has not been authorized to act in any other capacity, to perform duties that the trustee is mandated to carry out using independent business judgment.

Finally, these cases aid the court's administration of fee applications. It would be very difficult for the court to autonomously evaluate fee applications with which it was presented to see if duplicative work was being done if a trustee and a debtor's attorney unilaterally were to agree to a division of labor.

Recognizing these factors, the court will nonetheless, *in this case only,* slightly lessen the *NRG Resources* standard and partially allow N & S's post-trustee application. The court's conclusion is based on the fact that N & S has performed services that, for the most part, have benefited the estate, its fee application was not hotly contested, and, in fact, the trustee proffered that he did not believe that duplicative work had been done, the services were rendered at the commencement of the trustee's appointment, and, when the services were rendered, the issue before the court had not yet been determined in this district.

In lowering the *NRG Resources* standard in this case, the court finds authority from the case of *In re Ginji Corp.,* 117 B.R. 983 (Bankr.D.Nev.1990). In that case, the debtor's attorney applied for fees and costs for services that were rendered

after the appointment of a Chapter 11 trustee. The court disallowed some of the requested fees because it concluded that the work of the debtor's attorney was duplicative of that of the trustee. In so holding, the court slightly modified the standard set forth in *NRG Resources* when it stated:

> Once the Trustee had been appointed and assumed the day to day operation of the hotel and casino, debtor's counsel's role should have subsided somewhat. However, [the firm] continued to take a very active role in researching, preparing and defending various motions.... At least one court has held that once a trustee has been appointed the debtor and its counsel have no role and cannot receive compensation. [citing *NRG Resources*]. However, in light of the provisions of 11 U.S.C. § 330 which permit compensation to a debtor's attorney, the Court believes that the correct approach is not to disallow fees but to scrupulously inquire into such services so as to ascertain whether or not they were for the benefit of the estate or for some other interest.

*Id.* at 992. The court indicated that it would be appropriate to award fees to a debtor's attorney who had first discussed the case with the trustee and its attorney and had then worked out a fair division of labor.[3]

While the court has concluded that it will allow some of N & S's post-trustee fees and costs under the *Ginji* standard, it emphasizes that in the future it would be prudent practice for the debtor's attorney to be authorized as special counsel to the trustee pursuant to § 327(e) if it intends to perform services that are duties of the trustee. Although N & S argues that the Code provides that any party in interest may make claim objections, it does not follow that related fees and costs of that party in interest should be given administrative priority pursuant to §§ 330 &

503(b)(2). Furthermore, N & S's argument disregards: (1) the cost/benefit analysis that the court considers when it appoints a trustee, (2) that, upon appointment, the trustee is the manager of the estate and is to administer it using independent business judgment, and (3) that §§ 1106 and 704 make many tasks, especially claim analysis and litigation, a duty of the trustee.

With these thoughts in mind, the court concludes that of the $33,286.00 in post-trustee fees that have been requested by N & S, the court will allow $27,086.60. This amount is reached by reviewing Debtors' Exhibit D which itemizes the type and amount of post-trustee services that N & S rendered. The court will allow the $2,732.40 that was requested for services called "general estate administration" inasmuch as Mr. Hyde represented to the court that numerous inquiries were made of N & S regarding the status of the case after the appointment of the trustee. The court will also allow as non-duplicative all of the $7,468.00 of fees requested for "work on specific claims." Finally, the court will allow as actual, reasonable, and necessary, $299.00 in services rendered regarding the FORCO Agreement, $143.00 for correspondence to the estate of Reed Watkins, $65.00 in services rendered regarding the Bridgestone/Firestone agreement, and $132.00 for fee application preparation.

The court, however, will deduct as excessive: (1) $558.00 from the $858.00 requested for work done on Deloitte & Touche's fee application; (2) $375.00 from the $975.00 requested for plan and disclosure statement review; (3) $300.00 from the $3,232.00 requested for services rendered regarding the Forchuk claim; $1,000.00 from the $5,455.00 requested for preparing claim summaries. In addition, the court has also subtracted $4,000.00 from the $11,927.00 requested for general claim objection matters. That amount consists of fees

---

**3.** *In re Ginji, Inc.,* 117 B.R. 983 (Bankr.D.Nev. 1990), can be criticized inasmuch as it fails to recognize that while 11 U.S.C. § 330(a) provides for compensation to the debtor's attorney, that section presumes that the professional will be compensated to perform services on behalf of its client. When a trustee has been appointed in a Chapter 11 case, the debtor is no longer authorized to carry on the duties set forth in 11 U.S.C. §§ 704 & 1106. Thus, work performed by the debtor's attorney on such tasks should be presumed to be performed on behalf of the debtor which is unreasonable, unnecessary and, therefore, non-compensable under § 330(a).

for services that were rendered regarding general claim analysis and the preparation of objections. As heretofore mentioned, § 704(5), made applicable to Chapter 11 trustees under § 1106(a)(1), states that "if a purpose would be served, [the trustee has a duty to] examine proofs of claims and object to the allowance of any claim that is improper." Thus, claim analysis and objections are in the province of the trustee. While the trustee may seek the employment of counsel to deal with more complicated claims, ordinary objections, such as duplicate claims and late filed claims, are generally dealt with by the trustee. *Cf.* 11 U.S.C. § 328(b). In this category of services, many of the claims that were objected to by N & S were of the later grouping.

#### (ii) *Pre–Trustee Fees*

In addition to the post-trustee fee request, the court finds that N & S's request of $28,144.40 for pre-trustee fees must be reduced to $27,531.40 under requirements of § 330(a). The court's reduction of the fees by $613.00 is based on the following deductions: (1) $60.00 for attorney rates that were charged to the estate to deliver documents; (2) $25.00 an hour for services that were performed by a law clerk at the firm; and (3) $168.00 for dictating a memorandum the purpose of which N & S was not able to explain.

#### (iii) *Costs*

Finally, the court will award N & S all of their costs with the exception of $20.83 which was the amount charged to the estate for an in-town lunch.

#### ORDER

Accordingly, IT IS HEREBY ORDERED that the court will GRANT N & S's fee application IN PART. N & S is entitled to: (1) $27,086.60 for services that were rendered after the appointment of the trustee; (2) $27,531.40 for services that were rendered prior to the appointment of the trustee; and (3) $6,090.22 in costs.