**In re XEBEC, a California corporation, Debtor.**

**Theresa L. PFEIFFER, Appellant,**

**v.**

**Richard G. COUCH, Chapter 11 Trustee, Appellee.**

**BAP No. NC–91–1665–AsJR.**

**Bankruptcy No. 589–05352–JRG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 23, 1992.

Decided Dec. 1, 1992.

Theresa L. Pfeiffer, Los Gatos, Cal., appellant pro se.

John S. Wesolowski, San Jose, Cal., for appellee.

Richard Couch, Trustee.

Before ASHLAND, JONES, and RUSSELL, Bankruptcy Judges.

## OPINION

CALVIN K. ASHLAND, Chief Judge:

The debtor's attorney applied for $68,-484.70 in fees and $8,428.83 in costs for work performed on behalf of the debtor after the appointment of the Chapter 11 trustee. The bankruptcy court found that only two categories of services benefitted the estate and therefore awarded 2.12% of fees and costs as reasonable compensation. We affirm.

### STATEMENT OF THE FACTS

The debtor Xebec is a publicly traded corporation comprised of approximately 16 inactive subsidiaries and several active subsidiaries including: (1) Omnishore; (2) Information Memories Corporation ("IMC"); (3) Ahead Technologies; (4) Epelo, Inc.; (5) Nuova Voxsom, Inc.; (6) First Class Peripherals, Nevada and California; and (7) five subsidiaries located abroad. Xebec used a "matrix management" style which meant that Xebec management would frequently be employed by Xebec and one or more of the subsidiaries at the same time.

Xebec filed a Chapter 7 case in the District of Nevada on July 31, 1989. On August 21, 1989, the Xebec board of directors moved to convert the Xebec Chapter 7 case to a Chapter 11 case. Subsequently, on August 24, 1989, Xebec's subsidiaries Omnishore and IMC filed for reorganization under Chapter 11 in the Northern District of California. Xebec was granted a change of venue from the District of Nevada to the Northern District of California, on October 18, 1989.

On motion of the United States trustee, the bankruptcy court for the Northern District of California appointed a Chapter 11 trustee on March 29, 1990. Prior to the trustee's appointment, the debtor in possession was represented by the law firm of Theresa L. Pfeiffer. The bankruptcy court awarded Pfeiffer interim compensation in the amount of $53,084 for fees and $3,498.24 for costs advanced on behalf of the debtor in possession prior to the appointment of the Chapter 11 trustee.

Pfeiffer continued to represent Xebec, even though the Chapter 11 trustee re-

tained its own counsel. For example, the trustee moved and was granted a preliminary injunction enjoining any interference by James S. Torenson, Xebec's president. Xebec's attorney opposed the injunction expending 18.16 hours. Similarly, the trustee prepared a preliminary report on Xebec which included relevant information pertaining to the assets of Xebec and its subsidiaries. Xebec through its attorney spent 31.94 hours opposing the trustee's preliminary report submitting declarations to clarify the record. Nevertheless, the bankruptcy court found the report was accurate.

Xebec's attorney accumulated 85.29 hours contesting a four part motion filed by the trustee. The motion attempted to: (1) sell the assets of Xebec's subsidiary, IMC; (2) approve a settlement between Epelo and Hewlett–Packard; (3) approve an option to sell Xebec A.M. Ltd.; and (4) approve filing of Chapter 7 petitions for certain other subsidiaries.

The proposed sale of IMC was to Mountain Bay Tek, Inc., for $300,000 in cash plus royalties. However, S & R Disks made an offer which surpassed the Mountain Bay offer. S & R Disks made the offer on its own initiative represented by the law firm of Graham and James. A two day hearing was held pertaining to the proposed sale. Mountain Bay subsequently increased its offer by $825,000 and S & R Disks withdrew its bid.

The dispute between Epelo and Hewlett–Packard centered around a patent infringement suit. The trustee sought approval of a settlement offer. Xebec objected on the grounds that the trustee did not provide enough information about the settlement and the lawsuit for the court to make an informed decision. Nevertheless, the bankruptcy court approved the settlement. Xebec filed an appeal with respect to the sale of IMC and the settlement with Hewlett–Packard, but allowed the appeals to be dismissed for failure to prosecute.

The trustee brought a similar motion for the sale of Xebec's assets to Omnishore Electronics Manufacturing. Xebec objected to the sale maintaining that it had negotiated a better offer from Sierra Financial. However, Sierra subsequently withdrew its offer prior to the hearing and Xebec ultimately withdrew its original objection. Nevertheless, Xebec takes credit for the exclusion of a patent valued at $50,000. Xebec's attorney expended 61.35 hours objecting to the sale, the bulk of which time was spent drafting the Sierra offer to purchase.

Xebec moved to regain the status of a debtor in possession or in the alternative conversion to Chapter 7, while the trustee moved for conversion to Chapter 7. The bankruptcy court denied Xebec's attempt to regain debtor in possession status, but did convert the case to Chapter 7.

The next area of contention centered around the payment of fees. First, the law firm representing Ahead Technologies applied for attorney's fees which both Xebec and the trustee opposed. Xebec's attorney spent 2.5 hours contesting this matter. Second, the trustee moved to pay consultant's fees. Both Xebec and the United States trustee objected. The bankruptcy court ordered that the trustee file a supplemental declaration in support of his application for fees. Xebec's attorney spent 69.85 hours opposing this application. Third, the trustee submitted an interim fee application which was opposed by Xebec and the U.S. trustee. The bankruptcy court sustained the objections, and required the trustee to file an amended application. Xebec accumulated 12.68 hours opposing this motion.

Finally, Xebec's attorney accumulated 27 hours preparing her application for fees and reviewing the trustee's second interim application for fees. Pfeiffer's fee application requested $68,848.70 in fees and $8,428.83 in costs for work performed from March 29, 1990 through February 28, 1991. The second application for compensation consisted entirely of work performed after the appointment of the Chapter 11 trustee.

The bankruptcy court found that only the defense of the first fee application and opposition to request for attorney fees by counsel for Ahead Technology were compensable. The total award comprised 2.12% of the fees and costs originally requested by Pfeiffer. The court disallowed word processing fees in the amount of

$625.50 and expenses of $1,544.00 for a private investigator hired for the purpose of inquiring into the past history and background of the trustee. The court subtracted the preceding disallowed costs ($2,169.50) from the original demand of $8,428.83 yielding $6,259.33. This total was then multiplied by the fee percentage to arrive at the final awarded costs of $132.07 ($6,259.33 × 2.12%). Counsel for Xebec filed a timely notice of appeal on June 26, 1991.

### ISSUES

Whether the bankruptcy court applied the proper standard requiring the debtor's attorney to demonstrate that her services represented an identifiable, tangible, and material benefit to the estate justifying "reasonable compensation" under 11 U.S.C. § 330(a).

Whether the bankruptcy court abused its discretion finding that only 2.12% of the work done by the debtor's attorney qualified as "reasonable compensation" under 11 U.S.C. § 330(a).

### STANDARD OF REVIEW

 A bankruptcy court's award of attorney's fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of the law. *In re Riverside–Linden Inv. Co.*, 945 F.2d 320, 322 (9th Cir.1991); *In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 (9th Cir.1985); *In re Travel Headquarters, Inc.*, 140 B.R. 260, 261 (9th Cir. BAP 1992). This panel will not reverse a bankruptcy court's discretionary decision unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached after weighing all of the relevant factors. *Travel Headquarters*, 140 B.R. at 261; *In re Riverside–Linden Inv. Co.*, 111 B.R. 298, 300 (9th Cir. BAP 1990), *aff'd*, 945 F.2d 320, 322 (9th Cir.1991). Questions of law are reviewed de novo. *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 243 (9th Cir.1988).

### DISCUSSION

*Interlocutory Appeal*

 Jurisdiction of an appeal from an order of a bankruptcy court is governed by 28 U.S.C. § 158(a) & (b). This panel has jurisdiction to hear appeals from final orders, while leave of this panel is required for appeals from interlocutory orders. 28 U.S.C. § 158(a). Interlocutory orders are not appealable as of right; the debtor must first file a formal motion for leave to appeal. *See,* Federal Rule of Bankruptcy Procedure 8003(a). Nevertheless, this panel may consider the notice of appeal as a motion for leave to appeal. *See,* FRBP 8003(c); *see also, In re Klein/Ray Broadcasting,* 100 B.R. 509, 510–511 (9th Cir. BAP 1987); *In re Burke,* 95 B.R. 716, 717 (9th Cir. BAP 1989); *In re Price,* 79 B.R. 888, 889 (9th Cir. BAP 1987), *aff'd,* 871 F.2d 97 (9th Cir.1989); *In re De Laurentiis Entertainment Group, Inc.,* 124 B.R. 305, 307 (C.D.Cal.1991). Before we may reach the merits of this case, we must determine whether the bankruptcy court's denial of compensation to Xebec's attorney is a final order or an interlocutory order.

It is a well established rule that interim awards of compensation under 11 U.S.C. § 330 are interlocutory orders of the bankruptcy court, and therefore they generally are not considered final judgments. *In re Four Seas Center, Ltd.,* 754 F.2d 1416, 1419 (9th Cir.1985); *see also, In re Boddy,* 950 F.2d 334, 336 (6th Cir.1991); *In re Stable Mews Assoc.,* 778 F.2d 121, 122–123 n. 3 (2d Cir.1985); *In re Callister,* 673 F.2d 305, 307 (10th Cir.1982).

 Xebec's attorney filed an interim application for compensation. The bankruptcy court denied a substantial portion of the requested fees and Xebec filed an appeal before this panel. We find that Xebec's appeal is an interlocutory appeal requiring leave of this panel. Although Xebec did not file a formal motion for leave to appeal an interlocutory order, this panel will consider Xebec's notice of appeal as a motion for leave to appeal. Accordingly, we grant leave to hear the interlocutory appeal.

*Fee Compensation*

This case addresses the situation where the debtor in possession and his attorney

were replaced by the Chapter 11 trustee and his attorney. Nevertheless, the debtor's attorney continued to represent the debtor after the trustee's appointment, and subsequently applied for compensation.

■ Section 330(a) of the Code governs the compensation of officers:

the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered ...

11 U.S.C. § 330(a). Although § 330(a) seemingly enables the debtor's attorney to receive compensation, there is a split in the case law on the issue of whether the debtor's attorney may be compensated for services rendered after the appointment of a Chapter 11 trustee.

The minority position prohibits the debtor's attorney from receiving any compensation after the appointment of the Chapter 11 trustee. *In re NRG Resources, Inc.,* 64 B.R. 643, 647 (W.D.La.1986). The *NRG* court acknowledged that "just as a trustee replaces the debtor-in-possession [sic] ... so it is that the trustee's attorney displaces the debtor's attorney...." *NRG,* 64 B.R. at 647. Accordingly, there is no longer a need for the debtor to have representation. The *NRG* court went on to hold that the " 'debtor's attorneys' can serve no beneficial purpose for the estate *unless* they are characterized as attorneys for the trustee." *NRG,* 64 B.R. at 647 (emphasis in original).

The majority position softened the standard in *NRG* and developed the "benefit analysis" approach. *See, In re Ginji Corp.,* 117 B.R. 983 (Bankr.D.Nev.1990). The *Ginji* court held that:

in light of the provisions of 11 U.S.C. § 330 which permit compensation to a debtor's attorney, the Court believes that the correct approach is not to disallow fees but to scrupulously inquire into such services so as to ascertain whether or not they were for the benefit of the estate or for some other interest.

*Ginji,* 117 B.R. at 992; *see also, In re Sugarman,* 137 B.R. 391, 392–393 (Bankr. S.D.Cal.1992) (reluctant to adopt per se rule on posttrustee attorney fees opting for

flexibility); *In re TS Industries, Inc.,* 125 B.R. 638, 643–644 (Bankr.D.Utah 1991) (allowing posttrustee fees under the *Ginji* standard lessening the *NRG* standard); *In re Stoecker,* 114 B.R. 965, 970 (Bankr. N.D.Ill.1990) (no compensation to posttrustee attorney absent a benefit to the estate); *In re Grabill Corp.,* 110 B.R. 356, 359 (Bankr.N.D.Ill.1990); *In re Marker,* 100 B.R. 569, 570–571 (Bankr.N.D.Ala.1989).

The benefit analysis is consistent with the provisions found in the Bankruptcy Act of 1898:

Under the Act, in order for the debtor's attorney to be entitled to an award of compensation from the estate, the services were required to be rendered in aid of the administration of the estate.... The weight of authority under the Act was in favor of limiting compensability to services rendered in assisting debtors in performing their legal duties rather than exercising their legal privileges.

2 Lawrence P. King, *Collier on Bankruptcy,* ¶ 330.04[3] at 330–28 to –30 (15th ed. 1992); *see also, In re Marker,* 100 B.R. 569, 570–571 (Bankr.N.D.Ala.1989).

■ The bankruptcy court applied the benefit analysis holding that an attorney for a debtor in a Chapter 11 case where a trustee has been appointed may be compensated, but only for an identifiable, tangible, and material benefit to the estate. Currently, there is not a uniform standard for bankruptcy courts in applying the benefit analysis. We suggest the following considerations for assessing the benefit to the estate: (1) whether the debtor's attorney's actions duplicated the duties of the trustee or the trustee's counsel under 11 U.S.C. § 1106; *see, TS Industries,* 125 B.R. at 644; *Ginji,* 117 B.R. at 99; *Stoecker,* 114 B.R. at 970; *Marker,* 100 B.R. at 571; (2) whether the services have in fact, obstructed or impeded the administration of the estate; *In re Sandra Cotton, Inc.,* 91 B.R. 657, 659 (W.D.N.Y.1988); *Stoecker,* 114 B.R. at 970; and (3) whether the debtor attorney's actions are consistent with the debtor's duties under 11 U.S.C. § 521.

■ A debtor in possession has all the rights, powers, obligations and duties of a trustee. 11 U.S.C. § 1107; *Marker,*

100 B.R. at 570. However, when the debtor is removed as the debtor in possession and a trustee has been appointed to take his place, the debtor is no longer authorized to carry out the duties granted to a trustee under 11 U.S.C. § 1106. "Just as the trustee replaces the debtor-in-possession [sic], the trustee's attorney replaces the attorney for the debtor-in-possession [sic] in providing counsel and assistance in the administration of the estate." *Marker*, 100 B.R. at 570. The services rendered by the debtor's attorney which duplicate the trustee's duties under § 1106 should be presumed to be unreasonable, unnecessary and therefore, non-compensable under § 330. *TS Industries*, 125 B.R. at 644 n. 3. Conversely, the services rendered by the debtor's attorney which comply with the debtor's duties under § 521 should be presumed to be reasonable, necessary and therefore, compensable under § 330.

■ We adopt the benefit analysis for assessing compensation to the debtor's attorney after the appointment of a Chapter 11 trustee. However, we acknowledge that the benefit analysis does not require that the services rendered by the debtor's attorney be successful in every circumstance. *See, In re Sinor*, 87 B.R. 620, 624 (Bankr. E.D.Cal.1988). Accordingly, we conclude the bankruptcy court correctly applied the benefit analysis standard with respect to this case.

■ After a bankruptcy court has determined that the debtor's attorney's services were a benefit to the estate, the services merit compensation. However, the bankruptcy court must then determine whether the services satisfy the standard of "reasonable compensation" under § 330(a). Section 330 requires that compensation is to be reasonable, for actual necessary services rendered based on the nature, the extent, and value of the services rendered, the time spent on such services and the cost of comparable services other than in a case under the bankruptcy code. H.R.Rep. No. 595, 95th Cong., 1st Session 329–330 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6286–6287.

■ Bankruptcy courts begin the process of determining reasonable compensation by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended, which produces the loadstar amount. *In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir.1983); *see also, Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989). Next the bankruptcy court determines the reasonableness of the attorney's rates and hours by evaluating the loadstar in light of the *Johnson* factors. *In re Manoa Fin. Co., Inc.*, 853 F.2d 687, 690 (9th Cir.1988); *Yermakov*, 718 F.2d at 1471 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The billed hours that are not "reasonably expended" should be excluded from the initial loadstar amount. *See, Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The burden of demonstrating entitlement to the fees requested is on the applicant. *Stoecker*, 114 B.R. at 970.

Xebec's attorney requested compensation for the following services:

1. defense of first fee app.: 6.9 hrs
2. obj. to time spent by examiner in preparing fee app.: 2.34 hrs
3. preliminary work in formulating a plan of reorganization: 10.32 hrs
4. efforts to resolve the IMC/IBM problem: 3.14 hrs
5. appearances at hearings and defense of trustee's complaint and TRO: 18.16 hrs
6. obj. to preliminary report of trustee: 31.94 hrs
7. opp. to request for atty. fees by counsel for Ahead Technology: 2.5 hrs
8. opp. to four-part motion by trustee: 89.29 hrs
9. opp. to sale of assets to Omnishore: 1 hr
10. opp. to trustee's interim fee app.: 12.68 hrs
11. motion for immediate payment of attorney fees: 1.5 hrs
12. Motion to restore debtor to status of debtor in possession and to convert: 84.08 hrs
13. obj. to consultant's fees: 69.85 hrs
14. obj. to sale of Xebec assets to Omnishore: 61.35 hrs
15. work performed on second fee app./review of second fee app. of attorney's for the trustee: 27 hrs
16. miscellaneous: 12.22 hrs.

The bankruptcy court determined that two of the preceding categories of services or 9.4 hours were beneficial to the estate, and thereafter reasonably compensable: (# 1) defense of fee application, 6.9 hours; and (# 7) opposition to request for attorney's fees by counsel for Ahead Technology, 2.5 hours. The two beneficial services comprised approximately 2.12% of the total fees demanded.

■ Xebec points out several additional categories of services that did benefit the estate. Principally, Xebec maintains that their intervention in the IMC sale provided a benefit to the estate. Admittedly, S & R Disks' competitive bid for IMC's assets drove the price up $825,000 from the initial bid made by Mountain Bay. However, S & R Disks submitted their own bid and were competently represented by their own counsel. Xebec's participation in the process was not substantial enough to merit setting aside the bankruptcy court's findings.

■ Second, Xebec maintains that it saved the estate $50,000 by objecting to the asset sale to Omnishore Electronics. However, there is no indication in the record that clearly states why United States Patent No. 4,845,816 was excluded from the sale. Xebec's written opposition to the sale was principally limited to concerns with respect to the sales price and the potential offer to purchase by Sierra Financial. However, Sierra withdrew its offer to purchase and Xebec ultimately withdrew its objection to the sale. If Xebec did broker the patent exclusion from the sale, Xebec failed to include evidence of this contention in the record. *See,* United States Bankruptcy Appellate Panel of the Ninth Circuit Rule 4(c); *In re Burkhart,* 84 B.R. 658, 660 (9th Cir. BAP 1988) (responsibility to file an adequate record rests on the appellant).

■ The court reduced Xebec's expenses by $625.50 for word processing costs and $1,544 for a private investigator hired by the debtor's attorney to do a background check on the Chapter 11 trustee.

The court correctly subtracted the investigator's fees from the final expense calculation. The debtor's attorney should not be permitted to expend estate funds in an effort to discredit the Chapter 11 trustee. Similarly, we affirm the bankruptcy court's expense ~~duction for word processing costs,~~ ~~though the court awarded similar costs to the trustee's attorney. The record reflects that there were no objections to the trustee's expense allocation, while the U.S. trustee objected to Xebec's expenses. Moreover, the record reflects that the trustee's attorney fee application meticulously itemized the word processing expenses by date with a corresponding entry for costs. Xebec's fee application included a singular lump sum ~~entry for the word processing costs. *See, In re Bank of New England Corp.,* 134 B.R. 450, 456 (Bankr.E.D.Mass.1991) (expenses for word processing will not be allowed absent most compelling and well documented circumstances).

■ Ultimately, the bankruptcy court approved 2.12% for the fees and costs requested by the debtor's attorney. The bankruptcy court's limitation of these claims was discretionary. We will not reverse a bankruptcy court's discretionary decision unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached after weighing all of the relevant factors. *Travel Headquarters,* 140 B.R. at 261; *In re Riverside–Linden Inv. Co.,* 111 B.R. 298, 300 (9th Cir. BAP 1990), *aff'd,* 945 F.2d 320, 322 (9th Cir.1991). Accordingly, we hold that the bankruptcy court did not abuse its discretion in denying a substantial amount of the fees and costs requested by Xebec's attorney after the appointment of the Chapter 11 trustee.

## CONCLUSION

The decision of the bankruptcy court is affirmed. The bankruptcy court first eval-

uated whether the services rendered by Xebec's attorney after the appointment of the Chapter 11 trustee were a benefit to the estate and then evaluated whether the services were reasonably compensable.