**In re PINE VALLEY MACHINE, INC., Debtor.**

**Bankruptcy No. 93–41924–HJB.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 28, 1994.

---

484

James M. Lynch, U.S. Trustee.

Christopher Alberto.

G. Devon Bascomb.

Paul R. Salvage.

Steven Weiss.

Jonathan R. Goldsmith.

Peter M. Stern.

Daniel C. Cohn.

Martha A. Hildebrandt.

Guy B. Moss.

Francis S. Moran, Jr.

Joel N. Rosenthal.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the Application For Final Allowance of Administrative Fees And Compensation to Debtor's Counsel (the "Compensation Application") filed by Bascomb & Edelstein, P.C. ("B & E") as counsel to Pine Valley Machine, Inc. (the "Debtor").

### I. BACKGROUND

The Debtor filed a petition in this Court under Chapter 11 of the Bankruptcy Code (the "Code") on July 13, 1993. On the same day, the Debtor filed an Application to employ B & E as its Counsel. That Application (par. 3) recited the purposes of said employment as follows:

a. to advise [the Debtor] regarding [its] rights, duties and powers as a debtor in possession;

b. to prepare and file any statements, schedules, plans and other documents or pleadings required to be filed by the applicant during these proceedings;

c. to represent the applicant at all hearings, meetings of creditors, conferences and other proceedings in this case before this Court;

d. to perform such other legal services as may be necessary in connection with this case.

(par. 3).

Annexed to the Application was a "Bankruptcy Employment Contract", dated July 12, 1993, setting forth hourly rates, retainer terms and the purposes set forth above, in much the same broad character. Because the Employment Application failed to include the verified statement required by Bankruptcy Rule 2014 and Local Rule 31, it was denied by the Court (Queenan, J.) on July 29, 1993. The necessary statement was filed on August 5, 1993 and the Application was approved by the Court (Queenan, J.) on August 23, 1993.[1]

On July 28, 1993, the Debtor filed its Schedules and Statement of Affairs, together with a Stipulation between the Debtor and its pre-petition lender, pursuant to which the lender agreed to the Debtor's use of cash collateral.[2] However, on August 18, 1993, the case took a decidedly adverse turn. On that date, the Debtor filed an emergency motion to convert the case to Chapter 7 and to expedite the appointment of a Chapter 7 Trustee. In that motion, B & E explained that two (2) key employees had resigned and that substantial property of the Debtor had been misappropriated by the spouse of the Debtor's principal. Without the property (equipment), the Debtor was unable to operate. The case was immediately converted by

---

1. For the purposes of this case, the Court will treat B & E as having been authorized to represent the Debtor on and after July 13, 1994.

2. The Stipulation was approved by the Court (Queenan, J.) on August 13, 1993.

the Court (Queenan, J.) and a Trustee in Bankruptcy (the "Trustee") appointed.[3]

On September 16, 1993, in response to a Court Order directing the filing of updated schedules and a revised matrix list, B & E filed the requested updated schedules and list and thereafter attended the Section 341 Meeting. However, B & E was not finished. On September 23, 1993, B & E filed a motion seeking payment of administrative wage claims owed to the Debtor's principal and a key employee. On November 5, 1993, B & E filed an objection to a proof of claim filed by the Commonwealth of Massachusetts Department of Revenue ("DOR"), and thereafter engaged in negotiations with DOR and sought and obtained two (2) continuances of hearings set on the objections. Finally, on December 3, 1993, B & E amended the updated Schedules to include a previously omitted asset. At no time after conversion of the case on August 18, 1994 did B & E seek court authorization to render services on behalf of the estate.

On January 24, 1994, B & E filed the instant Compensation Application. The Compensation Application seeks payment for services rendered prior to and after conversion of the case to Chapter 7. Of the total requested allowance of $6,575.50, the amount of $3,631.25 [4] was rendered prior to conversion of the case to Chapter 7, with the balance of $2,944.25 rendered subsequent thereto. Beyond a recitation of the foregoing amounts and an all too sparse listing of time entries, the Application is devoid of advocacy. It neither tells the Court what the case was really all about nor why the estate was ultimately benefitted by the involvement of Counsel for the Debtor. The time entries are listed in quarter-hours rather than in tenths and are not understandable. A copy of the employment agreement is not included. A copy of the employment order is not annexed. No biography is attached. The Application seems to be totally unsullied by the requirements of Local Rule 34.

At the hearing on the Compensation Application and, notwithstanding its deficiencies, the Court allowed in full the requested allowance for services rendered by B & E prior to conversion of the case to Chapter 7. However, relying on 11 U.S.C. § 327(e),[5] the Court denied compensation for services rendered by B & E after conversion of the case to Chapter 7. Following that hearing, and upon further reflection, this Court vacated that portion of its Order which denied compensation in toto for post-conversion services and took the matter under advisement.[6] The Court also took under advisement a subsequently filed Application of the Trustee to employ B & E *nunc pro tunc*.

Finally, because it appeared to the Court that the issues presented were of general interest to the Bar, the Court invited amicus curiae briefs from the bankruptcy committees of the Boston Bar Association, the Worcester County Bar Association and the Hampden County Bar Association. Briefs were filed by the Boston Bar Association, the Hampden County Bar Association and attorney Paul Salvage. A brief was also filed by the United States Trustee.[7]

---

**3.** On August 26, 1993, the Trustee filed a motion (allowed September 13, 1993) seeking to have his firm appointed as his counsel.

**4.** Services rendered prior to the conversion include $1,757.50 rendered prior to the filing of the petition. However, inasmuch as Counsel for the Debtor received retainers of $1,000 on May 10, 1993 and $1,200 on July 13, 1993, and the payments do not appear subject to recovery under 11 U.S.C. § 547, practicality suggests that Counsel for the Debtor should be allowed to offset its pre-petition fee against the pre-petition retainer.

**5.** Section 327(e) provides:
(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.
11 U.S.C. § 327(e).

**6.** Subsequently, the Court took under advisement on the same issue an application for compensation filed by counsel to the debtor in the case of *In re George Spencer & Co., Inc.*, Chapter 7, Case No. 91–40329–JFQ.

**7.** The briefs filed by the Hampden County Bar Association (to the extent signed by the Trustee in this case), Paul Salvage (the applicant in *In re George Spencer, supra*) and the United States

## II. DISCUSSION

In any analysis of services rendered by debtor's counsel in a case converted from Chapter 11 to Chapter 7, it is important to distinguish between those services rendered on behalf of the Debtor from those rendered on behalf of the estate. *See generally,* 1 David G. Epstein et al., BANKRUPT-CY, §§ 1–7, 1–9 (1992). Although in Chapter 11 cases, the interests of the debtor and the estate are theoretically one, conversion of a case from Chapter 11 to Chapter 7 separates the pre-conversion entity into two (2) parts, the debtor and the estate. *Id.* The interests of the former are represented by pre-conversion debtor's counsel, while the interests of the latter are represented by the Trustee In Bankruptcy and agents of the Trustee.

When a case is filed as a Chapter 7 case in the first instance, counsel to the debtor is required to advise and represent the debtor with respect to the debtor's duties, pursuant to 11 U.S.C. Section 521 and Bankruptcy Rule 4002.[8] In such a Chapter 7 case, no rule in this District would require counsel for the debtor to seek advance employment authorization. *Cf. In re Saturley,* 131 B.R. 509, 516 (Bankr.D.Me.1991); *In re Trinsey,* 115 B.R. 828, 831–832 (Bankr. E.D.Pa.1990); *In re The Andy Gibb Organization, Inc.,* 81 B.R. 699 (Bankr.S.D.Fla. 1987); *In re Coastal Equities, Inc.,* 39 B.R. 304, 310 (Bankr.S.D.Cal.1984). The Court's only role is a "look back" review under 11 U.S.C. § 329(b)[9], in order to determine whether any compensation paid or agreed to

Trustee are not truly amicus briefs, as the parties, to some extent, have a stake or duty with respect to the outcome. However, the lack of true disinterestedness did not detract from the quality of their efforts. Furthermore, in the most practical sense, no attorney briefing for an opinion on attorney compensation is truly disinterested.

The Court also expresses its gratitude for the time and effort invested in the briefs filed. But the Court is not surprised. The Bar in this District has a long and distinguished history of contribution to bankruptcy jurisprudence.

8. Section 521 provides:
The debtor shall—
(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of debtor's financial affairs;
(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
(a) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.
(b) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(c) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;
(3) if a trustee is serving in the case, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title;
(4) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title; and
(5) appear at the hearing required under section 524(d) of this title.
11 U.S.C. § 521.
Bankruptcy Rule 4002 provides:
In addition to performing other duties prescribed by the Code and rules, the debtor shall:
(1) attend and submit to an examination at the times ordered by the court;
(2) attend the hearing on a complaint objecting to discharge and testify, if called as a witness;
(3) inform the trustee immediately in writing as to the location of real property in which the debtor has an interest and the name and address of every person holding money or property subject to the debtor's withdrawal or order if a schedule of the property has not yet been filed pursuant to Rule 1007;
(4) cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate;
(5) file a statement of any change of the debtor's address.
Fed.R.Bankr.P. 4002.

9. Section 329(b) provides:
(b) If such compensation exceeds the reasonable value of any such services, the court may

be paid by the debtor exceeds the reasonable value of the services provided.[10]

If advance authorization to represent the Debtor with respect to the duties set forth in § 521 is not required when the debtor files a Chapter 7 case ab initio, consistency alone would dictate that no prior authorization should be required for representation of a debtor with respect to those same duties just because the debtor arrived in Chapter 7 from a previous stop in Chapter 11. However, inasmuch as Debtor's counsel seeks payment from the estate, careful examination must be given to the specific provisions of § 521 and Bankruptcy Rules 4002 and 1019 to determine the extent and propriety of payment for services rendered in connection with those duties of the Debtor. Upon that examination, it is clear that while Bankruptcy Rules 4002 and 1019 as well as subparagraphs 1, 2, 4 and 5 of § 521 are relatively finite in scope, subparagraph 3 is open-ended. That subparagraph provides that a debtor shall "cooperate with the Trustee as necessary to enable the Trustee to perform the Trustee's duties...." 11 U.S.C. § 521(3). It becomes necessary, therefore, to determine the amount that should be properly chargeable to the estate for that cooperation.

■ Notwithstanding the open-ended nature of § 521(3), services by the debtor's counsel on the estate's behalf must be limited after the case has already been converted from Chapter 11 to Chapter 7. The combination of the disinterestedness requirement of 11 U.S.C. § 327(a) [11] and the provisions of § 327(e) suggest that debtor's counsel can only serve the **trustee** for a limited purpose subject to the approval of the Court and upon a finding that such employment is in the best interest of the estate. Therefore, while counsel for the debtor, without Court authorization, may assist the **debtor** to perform its duties, no provision of the Bankruptcy Code would authorize such counsel to assist the Trustee in the performance of the **Trustee's** duties under 11 U.S.C. Section 704, irrespective of the benefit to that Trustee or the estate. On the contrary, Section 327(e) appears to mandate that debtor's counsel obtain advance authorization to represent the Trustee. *In re TS Industries, Inc.*, 125 B.R. 638, 642–643 (Bankr.D.Utah 1991); *In re NRG Resources, Inc.*, 64 B.R. 643 (W.D.La. 1986).

The difficulty, of course, is determining where the Debtor's duty of cooperation under § 521(3) ends and the Trustee's duties under § 704 begins. And it is in this murky area that the instant application falls.

■ A majority of the courts that have analyzed the standard or standards to be employed in allowing compensation to debtor's counsel for post-conversion services have focused either on the necessity of those services in order to assure performance of the debtor's duties under § 521 or Bankruptcy Rules 4002 and 1019 or upon a benefit conferred to the estate (i.e., the Trustee) by virtue of those services. In analyzing those services, courts have, on a case by case basis, examined 1) whether the services were rendered in the nature of transition, 2) whether they resulted in an actual benefit to the estate, 3) whether they were duplicative of services rendered by the Trustee and 4) whether they were rendered in good faith or

---

cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

11 U.S.C. § 329(b); *see also*, Bankruptcy Rule 2016(b).

**10.** Of course, Chapter 11 cases provide a further complexity in that the representation of the debtor goes far beyond § 521. Representation is not only more complex, and therefore more costly, but also ongoing in nature. Furthermore, the debtor in possession also assumes the duties of a Trustee. *In re Urrutia*, 137 B.R. 563, 566 (D.Puerto Rico 1990); *see also* 11 U.S.C. § 1107(a). Because of the possibly extensive costs involved, advance authorization of the terms and conditions of employment are a necessity in order to determine whether compensation sought to be paid out of the estate is reasonably related to the services provided.

**11.** Section 327(a) provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

obstructed or impeded administration of the estate. *See Pfeiffer v. Couch (In re Xebec)*, 147 B.R. 518, 523 (Bankr.9th Cir.1992). This Court agrees that each of those factors must be considered on a case by case basis in order to determine the propriety of a request for compensation. No factor alone presents a sufficiently clear picture.

Firstly, services represented to be transition services must be limited in nature. The debtor's duty of cooperation may involve telephone conversations and/or meetings between counsel for the debtor and the Trustee in order to ensure that the Trustee has the full benefit of the debtor's historical perspective on the facts of the case and legal issues relating thereto. It may involve the furnishing of written reports. It may even involve preparing pleadings or appearances in emergency situations, so that estate rights are not lost while the Trustee works to rise to a level of comfort with the status of the case. However, transition has its limits. It does not include commencing a non-emergency post-conversion adversary proceeding or contested matter at the estate's expense. It does not include participation in extensive hearings or negotiations on the estate's behalf. It does not include the preparation of extensive briefs or position papers for the Trustee. The latter services are those which should be conducted by the Trustee or the Trustee's counsel, and, if by debtor's counsel, only to the extent of and with the safeguards set forth in § 327(e). Transition services are by definition limited. There is no basis for debtor's counsel to become a significant player in the administration of a Chapter 7 estate, without advance court authorization therefor.[12] *See In re Cohen*, 141 B.R. 1 (Bankr.D.Mass.1992).

Secondly, the Court must determine whether the services were of benefit to the **estate.** Services, however well intentioned, are not compensable from the estate if they deliver no corresponding benefit in the form of value to the estate or in reduction of administrative expenses by obviating the need for Trustee services. Therefore, a majority of the cases have declined compensation to debtor's counsel from the estate for services which benefitted only the debtor or its directors, officers or shareholders or were rendered in connection with the defense of discharge or dischargeability litigation or the debtor's exemptions where there was no corresponding benefit to the estate. *E.g, In re Ryan*, 82 B.R. 929 (N.D.Ill.1987); *In re Waxman*, 148 B.R. 178, 183 (Bankr.E.D.N.Y. 1992); *In re Office Products of America, Inc.*, 136 B.R. 964, 975 (Bankr.W.D.Tex. 1992); *In re Murray*, 132 B.R. 808 (Bankr. D.Mass.1991); *In re Leff*, 88 B.R. 105, 109 (Bankr.N.D.Tex.1988); *In re Cleveland*, 80 B.R. 204, 206 (Bankr.S.D.Cal.1987); *In re Vlachos*, 61 B.R. 473, 482 (Bankr.S.D.Ohio 1986).

Thirdly, probably encompassed in the foregoing transition and benefit analysis, but deserving of special emphasis, is the necessity that services by debtor's counsel not be duplicative of services rendered by the Trustee. *See In re Mondie Forge Co.*, 154 B.R. 232, 239 (Bankr.N.D.Ohio 1993); *In re TS Industries, Inc.*, 125 B.R. 638, 641; *In re Hunt*, 124 B.R. 263, 267 (Bankr.S.D.Ohio 1990); *In re Photon, Inc.*, 26 B.R. 693, 698 (Bankr.D.Mass.1982). Such duplicative services are of no value to the estate and have the potential of exponentially increasing costs of administration.

Fourthly, the services should not be compensable from the estate unless all of the services rendered by that counsel in the case have been rendered in good faith and have not obstructed or impeded administration of the estate. That good faith requirement should apply to both pre and post conversion services. Where the debtor counsel's actions or inactions (e.g., failing to cooperate with U.S. Trustee, failing to meet Court-ordered deadlines, etc.) were responsible for conversion of the case, it would be ironic to compensate counsel for services incident to a transi-

---

12. It has been suggested in the Briefs that post-conversion services by debtor's counsel can be justified on the grounds that the delay in obtaining authorization may prejudice the estate. That concern is a "red herring". Authorization may be obtained on an emergency basis and, even in the rare situation in which any delay whatsoever would mean a loss of estate rights, the Court is fully empowered to grant nunc pro tunc authorization at the first available hearing.

tion of that counsel's own making. Debtor's counsel actions should not be applauded for a benefit granted to the estate on account of post conversion services if the same counsel was responsible for losses arising from that counsel's pre conversion services. *See In re Sandra Cotton, Inc.,* 91 B.R. 657, 659 (W.D.N.Y.1988); *In re Stoecker,* 114 B.R. 965, 970 (Bankr.N.D.Ill.1990).

### The Instant Application

 Any fair review of the post conversion services set forth in the B & E Application reveals that a portion of those services go well beyond any reasonable notion of transition. Although services were expended in the preparation of the post conversion filings which are the debtor's responsibility under Bankruptcy Rule 1019 and in advising the Trustee of the status of the case (and, therefore, should be compensable), a majority of the services were provided in the commencement and prosecution of contested matters that were, from the estate's perspective, the province of the Trustee. Debtor's counsel should not be encouraged to perform trustee services with the hope or expectation of achieving compensation from the estate. As a general rule, the Trustee, and not the Debtor, should have determined whether it was in the best interest of the Chapter 7 estate to file a motion seeking payment of administrative wage claims. As general rule, the Trustee, and not the Debtor, should have determined whether it was in the best interest of the Chapter 7 estate to object to the DOR claim filed against the estate and then proceeded upon that determination. To the extent that the Debtor chose to file these motions as a party in interest in its own right and for its own purposes, they can not be characterized as transition services.

Furthermore, it is clear that not all of the foregoing services actually benefitted the estate.[13] At least to the extent of the motion to pay the administrative wage claims of the debtor's principal and a key employee, it is hard to see why the filing of that motion changed anything other than the timing of dividend distributions to creditors possibly favored by counsel to the debtor. From the estate perspective, the prosecution of that motion was not duplicative of Trustee services. Even more damning, it was unnecessary. With respect to the DOR claim objection, which purportedly benefitted the estate by reducing a priority claim, it is difficult to assess whether concerns by the debtor's principals about their personal liability may have impacted (or extended) those negotiations. Nevertheless, both the record in the case and the Trustee's motion described below do suggest that the pre-conversion services rendered by B & E were rendered in good faith.

In summary, the initiation of the aforesaid contested matters did not constitute transition services. One of the matters may have been unnecessary from the perspective of the estate and there is some doubt as to how much of a tangible benefit accrued to the estate as a result of the other contested matter. Notwithstanding those difficulties, the Trustee has, as described above, filed a motion for the appointment of B & E as counsel to the estate *nunc pro tunc.* The Trustee's motion applauds both B & E's assistance with transition as well as the benefit afforded to the estate arising from the reduction of the DOR claim. The Trustee also advises the Court that "many" of the services performed by B & E were performed at the request of the Trustee.

 The Trustee's motion, by implication, urges the Court to treat B & E fairly. The Trustee's points are well taken, but the appropriate vehicle is not through the Trustee's motion. Firstly, it is irrelevant that the Trustee requested that B & E perform the services. That request was not equivalent to court authorization. Secondly, the motion requests *nunc pro tunc* authorization for the retention of B & E as counsel for the Trustee. Section 327(e) prohibits such general retention. Pursuant to § 327(e), "[a] trustee, with the court's approval, may employ [debtor's counsel], *for a specified special purpose, other than to represent the trustee in con-*

---

13. Ironically, the Compensation Application recites "all professional services for which compensation is requested were performed by Appli-

cant for and on behalf of the Debtor and not on behalf of any committee, creditor or other person."

*ducting the case....*" 11 U.S.C. § 327(e) (emphasis supplied). No special purpose is detailed in the Trustee's motion. Thirdly, there is no basis shown for *nunc pro tunc* authorization. There was no emergency or extraordinary circumstances. Case law in this District is uniform in its reluctance to authorize employment *nunc pro tunc* in other than extraordinary circumstances. *In re Special Counsel to B & M Corp.*, 737 F.2d 115, 119 (1st Cir.1984); *In re Berman*, 167 B.R. 323 (Bankr.D.Mass.1994); *In re Morton Shoe Cos., Inc.*, 22 B.R. 449 (Bankr.D.Mass. 1982). *See also In re Luchka*, 152 B.R. 18 (Bankr.D.R.I.1993); *In re Doctors Hospital, Inc.*, 117 B.R. 38 (Bankr.D.P.R.1990).

And yet, the Trustee's attempt to achieve an equitable result, albeit in the form of an unsuccessful motion, does raise the question as to whether it is appropriate to deny compensation for post-conversion services in light of standards never before fully addressed in this District. This Court feels that a retroactive application of new standards to fee applications containing services rendered prior to creation of those standards is not equitable. Requests for compensation should be judged by the standards extant at the time that services are rendered. If this area has heretofore been obscure, counsel should not have to suffer for that lack of clarity. Therefore, the B & E Application will be reduced only by the amount of those services rendered on account of the motion for payment of the administrative wage claims, inasmuch as services on account of that motion were totally unnecessary and of absolutely no benefit to the Debtor's estate. Disallowance for that reason has been well-established in this District. *See In re The Vines, Inc.*, 159 B.R. 381 (Bankr.D.Mass. 1993); *In re Cumberland Farms*, 154 B.R. 9 (Bankr.D.Mass.1993); *In re Smuggler's Beach Properties, Inc.*, 149 B.R. 740 (Bankr. D.Mass.1993); *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr.D.Mass.1991).

### Conclusion

The Application Of Trustee to Employ Bascomb and Edelstein, P.C. Nunc Pro Tunc is denied. The balance of the request sought in the Application For Final Allowance Of Administrative Fees and Compensation of Counsel to Debtor is allowed as an administrative claim in the Chapter 7 case in the amount of $2,794.25. Separate orders shall issue in accordance with this Memorandum.