**In re HASSET, LTD., Debtor.**

No. 801–85340–511.

United States Bankruptcy Court, E.D. New York.

Aug. 21, 2002.

Charles H. Scupp, Garden City, NY, for debtor.

Robert L. Pryor, Pryor & Mandelup, Westbury, NY, for Chapter 7 Trustee.

## MEMORANDUM DECISION AND ORDER (RE: AWARD OF COUNSEL FEES)

MELANIE L. CYGANOWSKI,
Bankruptcy Judge.

By Notice of Motion dated January 22, 2002, Charles H. Scupp, Esq. ("Scupp or Debtor's Counsel"), seeks an order granting him reasonable compensation for services that he performed as counsel for the Debtor while the case was being administered in Chapter 11 and, thereafter, in Chapter 7. More specifically, Scupp seeks, pursuant to 11 U.S.C. § 503(b)(1)(A) and 11 U.S.C. § 330(a)(1)(A), the sum of $16,440 for services rendered in the following way:

(a) an award of $ 2,730 for 9.1 hours spent *before* the Debtor filed its bankruptcy petition on July 6, 2001;

(b) an award of $ 4,350 for 14.5 hours expended *during* the Chapter 11 phase of this case; and

(c) an award of $ 9,360 for 31.2 hours expended *after* the case was converted from Chapter 11 to Chapter 7.

No expenses were sought to be reimbursed. Moreover, Scupp concedes that he received a retainer in the sum of $3,500 pre-petition and that this payment would be used to off-set an award of fees.

Robert L. Pryor, Esq., the Chapter 7 Trustee (the "Trustee"), and the Office of the United States Trustee (the "UST") filed objections to Scupp's request. The thrust of their objections are that (i) any work done pre-petition should be paid by the retainer and not from post-petition assets of the bankruptcy estate; (ii) any fees for services rendered during the Chapter 11 phase of the case are subordinate to administrative expenses incurred in Chapter 7 and should therefore await the final meeting of creditors at which there will be a determination of whether there are funds sufficient to pay such claims; (iii) the time entries are vague and uninformative; and (iv) Scupp has not shown that the services rendered during the Chapter 7 phase of the case were for the benefit of the estate, as opposed to the benefit of the principals.

Familiarity with the prior proceedings is assumed. By way of brief background, the Debtor filed a voluntary petition seeking relief under Chapter 11 on July 6, 2001. The Debtor is the business of retail dry cleaning. The case was converted to Chapter 7 on October 4, 2001. Scupp was retained as counsel for the Debtor by Order on that same date. Among the services for which Scupp seeks payment is his assistance in selling the Debtor's business, post-conversion, to a principal of the Debtor, which yielded $50,000 for the estate.

### The Pre–Petition Time Charges

According to his time entries, Scupp spent 9.1 hours for services rendered prior to the filing of the Chapter 11 petition on July 6, 2001. His hourly fee is $300.00. Neither the Trustee nor the UST objects to Scupp's fee application for this period of time. Both argue, however, that Scupp should look to the retainer of $3,500 for payment of his fees for these time charges. The Court agrees. A review of the time entries for Scupp during the period of June 29, 2001 through July 6, 2001 show that the services were required and reasonably accomplished in terms of time committed to the tasks. Although the retainer agreement is dated the same day as the filing of the petition on July 6, 2001, the Court concurs that this source of funding should be available to pay for the services rendered during the pre-petition period. Accordingly, the Court awards $2,730.00 for the 9.1 hours of services rendered pre-petition by Scupp and directs that this be paid from the $3,500.00 retainer that he is holding in escrow.

### The Chapter 11 Phase of the Case

Scupp seeks an award of $ 4,350 for 14.5 hours of services rendered from the date of filing of the petition on July 6, 2001 through the date of conversion of the case to Chapter 7 on October 4, 2001. The nature of the services that he provided may be summarized as follows:

- 5 hours for telephonic conferences with the principal of the Debtor or the landlord regarding renewal of the lease and/or assumption of the lease;

- 7.8 hours for administrative matters, including, inter alia, telephonic conferences with the principal of the Debtor regarding the preparation of monthly operating reports; preparation for and attendance at the status conference before the Court; and preparation for and attendance at the Section 341 meeting of creditors; and

- 1.7 hours for telephonic conferences with the principal of the Debtor concerning possible conversion to Chapter 7, a "proof of claim" issue, and preparation of amended schedules.

The UST objects, in general, to the fact that Scupp's application does not comply with its guidelines. It further objects to 1.7 hours of time entries on the ground that they represent "lumping" of services (see, e.g., 7/9 and 7/11 entries). The UST also argues that Scupp inappropriately included travel time in his entries with respect to the status conference and the Section 341 meeting of creditors. Moreover, the UST contends that certain of the entries are vague (e.g., 7/30 entry).

For his part, the Trustee argues that 14.5 hours of time expended during the Chapter 11 phase of the case was too excessive and "unreasonable given the little activity which occurred during that time and the little benefit received by the Debtor." Trustee's Opposition to Motion for Administrative Expense Award ("Trustee's Opposition"), at ¶ 8.

 Upon consideration of these arguments and the time entries, the Court first observes that the Order of retention for Scupp's services as Debtor's counsel was not entered until the date on which the case was converted to Chapter 7. Section 330(a) requires an application to be made coincident with the commencement of the services to be performed. Nunc pro tunc applications are disfavored in this Circuit, see In re Hazen Agricultural Products Service, Inc., 109 B.R. 602 (Bankr.W.D.N.Y.1990), but have been permitted when the attorney performs services of "value" to the estate. See, e.g., In re Triangle Chemicals, Inc., 697 F.2d 1280 (5th Cir.1983). Because all parties in interest, including the Debtor, were aware that Scupp was serving as its counsel and because certain of the services performed by Scupp were of "value" to the estate, the Court believes that nunc pro tunc approval of Scupp's retention should be granted.

 Second, the Court agrees with the UST that 0.4 hours of time entries should not be compensated because they are too vague and uninformative (i.e., 7/27); 1 hour should be stricken from the 4.8 hours of time entries for the status conference and Section 341 meeting (i.e., 8/2 and 8/31) because it appears to include travel time, which should not be charged to the estate, and alternatively, appears to be an unreasonable amount of time for these activities; and 0.5 hours should be stricken from the 5 hours of time entries for the services rendered in connection with the lease renewal because these entries are also unreasonably vague and uninformative (i.e., 7/9, 710, 7/26). Accordingly, after utilizing the "lodestar" approach, the Court awards $3,780.00 which represents 12.6 hours of services rendered by Scupp, billed at his customary rate of

$300.00, for the period during which the case was in Chapter 11.

■ Third, the Court concurs that the award of compensation of $3,780.00 for services rendered during the Chapter 11 phase of the case must be subordinated to the Chapter 7 administration expenses pursuant to 11 U.S.C. § 726(b). Consequently, payment must be deferred until after the final meeting of creditors. In addition, the award of compensation must first be paid from the sum of $770.00 which remains from the retainer before payment by estate funds.

### The Post–Conversion Time Charges

Scupp seeks an award of $9,360.00 for 31.2 hours of services rendered *after* the case was converted to Chapter 7. Scupp argues that the services that he performed during this time were of "substantial benefit to the administration and establishment of the estate." More specifically, he contends that if the Petschauers (the principals of the Debtor) had not purchased the business from the Trustee, there would, more likely than not, have been no estate created and therefore no distribution available to the creditors. Scupp further asserts that it was through his personal efforts that the interim operating agreement and purchase of the business were effectuated. He also states that he assisted the Trustee in his negotiations with the landlord.

Scupp's time charges during the post-conversion phase may be summarized as follows:

- 9.6 hours for services rendered in connection with the transition of the Debtor to Chapter 7 (*see, e.g.,* entries on 10/4, 10/5, 10/12, 11/7);
- 4.3 hours for services rendered in connection with an interim operating agreement (*see, e.g.,* entries on 10/30, 11/2, 11/6);
- 13.4 hours for services rendered in connection with the proposed sale of the Debtor's business (*see, e.g.,* entries on 10/16, 10/19, 10/23, 10/26, 11/2, 11/7, 11/19, 11/30, 12/4); and
- 3.9 hours for services rendered in connection with other miscellaneous matters, including, the Trustee's Order to Show Cause and conversations with counsel for creditor Price (*see, e.g.,* entries on 10/22, 11/8, 11/9, 11/28, 11/29).

There is no objection to Scupp's request for compensation for services rendered in connection with the transition of the case to Chapter 7. Accordingly, the Court awards $2,880.00 for 9.6 hours of service at the rate of $300 per hour.

Both the Trustee and the UST object to any other award of fees for services rendered by Scupp after the case was converted to Chapter 7. For his part, Scupp claims that a "viable estate was created" as a result of his effort to assist the Trustee and the principals in arriving at an agreement that enabled the principals to operate the business on an interim basis and then purchase the business. *See Affirmation* at ¶ 19. Scupp further argues that there was little likelihood that any party other than the principals would have been interested in purchasing the business because of certain zoning and environmental restrictions, *id.* at ¶ 23, and that consequently his services benefitted the estate.

■ The Court recognizes that counsel for a debtor in a Chapter 7 case that has been converted from Chapter 11 may be compensated under 11 U.S.C. §§ 330(a) and 329(b) for the reasonable value of services that actually benefit the estate.[1] In

1. Although there is a split among the courts as to whether a debtor's attorney is permitted

contrast to traditional fee analysis, the Court's role is limited to a "look back" review of the services rendered by counsel and the debtor's attorney is not required to obtain prior court authorization under Section 327(e) as would be required in a Chapter 11 case. *In re Pine Valley*, 172 B.R. 481, 486 (Bankr.D.Mass.1994). The rationale underlying a more limited court analysis is that a debtor's attorney's role in a Chapter 7 is limited and more confined. As the court explained in *In re Pine Valley*, an attorney in a Chapter 11 case represents the debtor-in-possession (a concept theoretically combining both the debtor and the estate) whereas, after a case has been converted to Chapter 7, the entities are divided into the debtor, represented by counsel, and the estate, which is represented by the trustee. *Id.*, 172 B.R. at 486. Thus, the theory follows that counsel for a debtor may assist the *debtor* to perform its duties, without having first received Court authorization. *Id.*, 172 B.R. at 487. On the other hand, to the extent that debtor's counsel seeks to represent the trustee in the performance of the trustee's duties, it is clear that § 327(e) requires advance authorization from the Court. *Id.; In re TS Industries, Inc.*, 125 B.R. 638, 642–43 (Bankr.D.Utah 1991); *In re NRG Resources, Inc.*, 64 B.R. 643 (W.D.La.1986).

Most courts permit fees to be paid to debtor's counsel for services rendered during the transition from Chapter 11 to Chapter 7. Such services might include the transferring of property to the trustee, informing the trustee of the status and history of the case, and assisting the debtor in amending its schedules. *See, e.g., In re Brierwood Manor, Inc.*, 239 B.R. 709,

715 (Bankr.D.N.J.1999). The issues become more murky when the attorney performs work that assists the trustee or duplicates the trustee's services or duties. *See In re Stroudsburg Dyeing & Finishing Co.*, 209 B.R. 648, 650 (Bankr.M.D.Pa. 1997) (attorney could be compensated for services performed after appointment of a chapter 11 trustee if such services were consistent with the debtor's continuing statutory duties, not duplicative of duties of the trustee or trustee's counsel, and not an impediment to the administration of the estate). In circumstances where the work of a debtor's attorney assists the trustee or runs parallel to the trustee's services or duties, courts have been reluctant to allow compensation without advance authorization as required by Section 327(e). *Id.* Moreover, the debtor's attorney must show that his or her retention was for a "special, limited" purpose of avoiding duplication of the trustee's duties. *In re Brierwood Manor, supra,* 239 B.R. at 717. Otherwise, the debtor's attorney would not be compensated for post-conversion work in assisting the trustee, even if the work actually benefitted the estate. *Id.*

■■■ Here, Scupp performed services that went beyond the typical statutory duties required of a debtor post-conversion. These services included his assistance to the Trustee in arranging (i) the interim operating agreement, (ii) a transition of the lease to a new purchaser, and (iii) the sale of the asset to the principals of the debtor. Each of these efforts enhanced the value of the estate and played a significant role in bringing $50,000 in funds to the estate. It is equally clear, however,

an allowance of fees and expenses in a Chapter 7 case (following its conversion from Chapter 11) as a result of the Bankruptcy Reform Act of 1994 in which the phrase "or debtor's attorney" was omitted from Section 330(a), the majority of courts, including the

Court of Appeals for the Second Circuit, have concluded that the omission was inadvertent. *See In re Ames Dep't Stores*, 76 F.3d at 71 (2d Cir.1996); *but see In re Equipment Services*, 290 F.3d 739 (4th Cir.2002).

that these services were in the nature of, or duplicative of, the duties of a trustee or trustee's counsel (and *not* of the kind of more limited set of duties conferred upon the debtor under Section 521). Therefore, prior court authorization was required pursuant to Section 327(e). As in *Brierwood Manor*, it is not sufficient that the services rendered by Scupp may have benefitted the estate.

Accordingly, the Court awards fees for the 9.6 hours of transition services provided by Scupp, at the hourly rate of $300, for a total award of $2,880.00. The Court denies Scupp's application to the extent that he seeks compensation for all other services rendered during the post-conversion period.

### Conclusion

The Court awards total compensation to Scupp in the sum of $9,390.00, broken down as follows:

(1) $2,730 for the 9.1 hours of services rendered pre-petition; to be paid from the $3,500 retainer that he is holding in escrow;

(2) $3,780 for the 12.6 hours of services rendered during the Chapter 11 phase of the case; to be paid from the remaining sum of $770 in the retainer that he is holding in escrow, subordinated to the Chapter 7 administration expenses pursuant to 11 U.S.C. § 726(b), and otherwise deferred until after the final meeting of creditors; and

(3) $2,880 for the 9.6 hours of transition services rendered during the post-conversion period; to be subordinated to the Chapter 7 administration expenses pursuant to 11 U.S.C. § 726(b) and deferred until after the final meeting of creditors.

The Court directs the clerk to serve a copy of this Memorandum Decision and Order upon the Debtor, Scupp, the Chapter 7 Trustee and the Office of the United States Trustee.

IT IS SO ORDERED.