317 F.3d 918
 In re Darrel D. SMITH, Debtor.
Darrel D. Smith, Appellant,
v.
Edwards & Hale, Ltd., Appellee.
Darrel D. Smith, Appellant,
v.
John Peter Lee, Ltd., Appellee.
Darrel D. Smith, Appellant,
v.
Tom Grimmett, John Peter Lee, Ltd., Nancy L. Allf, Edwards & Hale, Ltd., Appellees.
 No. 00-17260.
 No. 00-17274.
 No. 01-16531.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 2002.
 Filed September 24, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Darrel D. Smith, Pro Se, Las Vegas, NV; David Mincin, Law Offices of Richard McKnight, P.C., Las Vegas, NV, for the debtor-appellant.
 Denise H. Abramow, Shea & Carlyon, Ltd., Las Vegas, NV, for creditor-appellee Edwards & Hale, Ltd.
 Paul C. Ray, John Peter Lee, Ltd., Las Vegas, NV, for creditor-appellee John Peter Lee, Ltd.
 Appeal from the United States District Court for the District of Nevada; Howard D. McKibben, District Judge, Presiding, Johnnie B. Rawlinson, District Judge, Presiding. D.C. Nos. CV-S-99-1761-HDM, CV-98-01616-HDM/LRL, CV-S-99-01114-KJD.
 Before: HUG, CUDAHY,* and TASHIMA, Circuit Judges.
 CUDAHY, Circuit Judge:
 
 
 1
 Darrel D. Smith, a Chapter 7 debtor, is appealing the decisions of the district courts affirming: (1) the bankruptcy court's award of attorneys' fees to the law firm of Edwards & Hale, Ltd. (E & H), debtor's special counsel in a 1992 state court action; (2) the bankruptcy court's award of certain administrative fees and costs to Smith's chapter 11 counsel, John Peter Lee, Ltd., (JPL); and (3) the bankruptcy judge's refusal to recuse himself. Under the somewhat convoluted facts of this case, we affirm the various awards of attorneys' fees. We also affirm the denial of the recusal motion. Although these lawsuits present some valid issues, much of the fee litigation was occasioned by a stubborn refusal of the debtor to recognize valid claims by attorneys; his continuing battles with his lawyers have been extraordinarily wasteful of the resources available in bankruptcy.
 
 I.
 A. General Background
 
 2
 Smith filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 21, 1991. He retained JPL as Debtor's counsel. On January 11, 1994, the bankruptcy court approved Smith's Third Plan of Reorganization. The Plan provided for three avenues for the payment of claims. First, funds could be paid out of the proceeds of Smith's state law claims against a group of defendants arising out of his community property claims against his former wife's property. E & H was retained for this litigation. Second, funds could be paid out of proceeds from the sale of reproductions and prints of Smith's Maxfield Parrish painting, Daybreak. Third, if sufficient funds were not raised from either of these two sources within a specified time, the Plan provided that Smith would sell Daybreak. As things turned out, Smith could not raise sufficient funds employing the first two methods. The state law litigation produced only $80,000 instead of the $9 million estimated by Smith. Smith also gave up selling the prints of Daybreak because the sales of the prints would not return a net profit after expenses. At the same time, Smith became unwilling to sell the painting itself.
 
 
 3
 Smith's Plan specifically authorized the bankruptcy court to convert his case to Chapter 7 if he defaulted under the terms of the Plan. When Smith defaulted by not selling Daybreak, his case was therefore converted to a Chapter 7 proceeding and a trustee was appointed. On February 16, 1996, the bankruptcy court ordered the sale of Daybreak at public auction. This order was carried out and the painting sold at auction for $3.9 million, net of buyer's premium and applicable state and local taxes. Under the order of the court, Smith is to receive any funds in excess of bankruptcy claims and administrative fees and costs. Smith has also received authorization from the bankruptcy court to use the excess funds to purchase another Maxfield Parrish painting and to fund certain litigation, including his challenges to the fee awards granted to E & H and JPL. Smith had appealed the conversion of his case to Chapter 7, as well as the bankruptcy court's approval of the sale of Daybreak, but these appeals have been unsuccessful.
 
 
 4
 B. Fees awards to Edward & Hale, Ltd.
 
 
 5
 For its work on the state litigation, the bankruptcy court granted four separate fee applications by E & H, totaling approximately $175,000. After the bankruptcy case was converted to Chapter 7, E & H hired Shea & Carlyon, Ltd. to recover its fees as administrative expenses. Although Smith appealed every order relating to fees and expenses awarded to E & H, Shea & Carlyon was successful in defending E & H's fee awards against all challenges. E & H recovered approximately $175,000, but it also sought reimbursement for the fees and costs it incurred in defending its fee awards against Smith's challenges. In this connection, the bankruptcy court awarded E & H additional fees of $43,587 and costs of $3,777 by order entered November 23, 1999. The bankruptcy court also found that the proceedings involving fees had reached the stage of frivolousness. The court noted that its award of fees to Smith's current counsel (Law Offices of Richard McKnight, P.C.) was contingent upon the award of fees to the other professionals in the case, which included E & H and JPL. Thus, the bankruptcy court found itself awarding fees based on applicable bankruptcy law, contract law and Nevada state law. By order dated October 10, 2000, the district court affirmed the awards of fees based on bankruptcy law and on contract law and Smith now appeals. He does not challenge the reasonableness of the amount of the fee awards, but rather the legal basis for the awards.
 
 
 6
 C. Fee Awarded to John Peter Lee, Ltd.
 
 
 7
 JPL was awarded more than $700,000 for services performed while counsel to Smith. JPL sought additional fees for services allegedly rendered after it withdrew as debtor's counsel. In this connection, JPL filed four fee petitions, all of which were opposed by Smith, but the bankruptcy court granted all of JPL's fee applications, at least in part. Smith appealed the partial grant of the first fee application to the district court. The district court reversed and remanded the case to the bankruptcy court to make more detailed findings to support the fee award. On remand and after an evidentiary hearing, the bankruptcy court reaffirmed all its earlier fee awards and awarded new fees to JPL for the additional fee litigation, resulting in a total award of $343, 801.40. Smith filed a second appeal to the district court, and that court affirmed the bankruptcy court's fee rulings. Smith now appeals to this court, and similarly to his appeal of the fees awarded to E & H, Smith does not challenge the reasonableness of the amount of the fee awards but does question the legal basis for the awards.
 
 D. Motion to Recuse
 
 8
 In 1992, Smith filed a motion, in the bankruptcy court, to enforce a written settlement agreement, which resolved his claims against his former wife's (Mitzi Briggs's) property. On July 16, 1992, following oral arguments, Judge Jones enforced the agreement with some modifications. Smith appealed with respect to those modifications. On February 10, 1994, the district court vacated the bankruptcy court's order and remanded with instruction to hold an evidentiary hearing. After the evidentiary hearing, Bankruptcy Judge Jones reaffirmed his ruling, and Smith did not appeal.
 
 
 9
 In 1999, Smith, who had been represented during this litigation by JPL, filed malpractice claims against that law firm. During the hearings on the malpractice claims in February and April 1999, Smith alleged that Judge Jones then for the first time indicated that he had formed a fixed predisposition during the 1992 hearing with respect to the settlement (then the subject of litigation); this mindset was still in effect during the 1994 evidentiary hearing. Smith filed a motion to disqualify Judge Jones on June 1, 1999, but the bankruptcy court denied Smith's motion for recusal. On August 30, 2000, the district court affirmed. Smith now appeals again.
 
 II.
 
 10
 This court has jurisdiction under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291 since this is an appeal from the final judgments of two district courts. We review de novo the district court's decision on appeal from a bankruptcy court. See Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1084 (9th Cir.2000) (en banc). We apply the same standards of review that govern the district court's review, Ting v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir.1998), giving no deference to the district court's decision, Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir.2001). A bankruptcy court's award of attorneys' fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of law. In re Nucorp Energy, Inc., 764 F.2d 655, 657 (9th Cir.1985). A bankruptcy court's denial of a recusal motion is also reviewed for abuse of discretion. United States v. $292,888.04 U.S. Currency, 54 F.3d 564, 566(9th Cir.1995). Questions of law are reviewed de novo. Nucorp, 764 F.2d at 657.
 
 A. Attorneys' Fees
 
 11
 Smith opposes the fees awarded to E & H and JPL on both general and specific grounds. Smith's general objections to the fee awards require an analysis of how the Bankruptcy Code provides compensation for attorneys working on a case.
 
 
 12
 1. Analytical Framework for Attorney Compensation
 
 
 13
 Smith argues that 11 U.S.C. § 330(a) does not permit the award of fees to Chapter 7 or Chapter 11 debtor's attorneys. Thus, he argues, the bankruptcy court was not authorized to award fees to either E & H or JPL who served in that capacity. Even if section 330(a) does allow such an award of fees, Smith argues that the fee awards cannot be supported under the benefit analysis approach employed in Pfeiffer v. Couch (In re Xebec), 147 B.R. 518 (9th Cir.BAP 1992). We address these contentions in turn.
 
 
 14
 Section 330(a) of the Bankruptcy Code governs the compensation of officers and professionals working on a bankruptcy case. Prior to 1994, section 330(a) provided that:
 
 
 15
 After notice to any parties in interest and to the United States trustee and a hearing, ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title [which authorizes the trustee or creditors' committee to employ attorneys and other professionals], or to the debtor's attorney —
 
 
 16
 (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
 
 
 17
 (2) reimbursement for actual, necessary expenses.
 
 
 18
 11 U.S.C. § 330(a) (1988) (emphasis added). Subsequently, Congress passed the Bankruptcy Reform Act of 1994(Reform Act). The Reform Act renumbered various provisions and substituted the following relevant provisions in section 330:
 
 
 19
 (a)(1) After notice to the parties in interest and the United States trustee and a hearing, ... the court may award to a trustee, an examiner, a professional person under section 327 or 1103 —
 
 
 20
 (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
 
 
 21
 (B) reimbursement for actual, necessary expenses.
 
 
 22
 (a)(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —
 
 
 23
 ...
 
 
 24
 (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
 
 
 25
 ...
 
 
 26
 (a)(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for —
 
 
 27
 (i) unnecessary duplication of services; or
 
 
 28
 (ii) services that were not —
 
 
 29
 (I) reasonably likely to benefit the debtor's estate; or
 
 
 30
 (II) necessary to the administration of the case.
 
 
 31
 
 (a)(4)(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.
 
 
 
 32
 ...
 
 
 33
 (a)(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.
 
 
 34
 11 U.S.C. § 330(a) (1994) (emphasis added).
 
 
 35
 Because the Reform Act removed the phrase "debtor's attorney" from what is now section 330(a)(1) and added subsection (a)(4)(B), which expressly authorizes awards of reasonable compensation to debtor's attorneys only in Chapter 12 and 13 cases, both the Fifth and the Eleventh Circuits have held that section 330(a) precludes the award of administrative fees to counsel for Chapter 7 or 11 debtors. See In re Inglesby, Falligant, Horne, Courington & Nash, P.C. v. Moore (In re American Steel Product, Inc.), 197 F.3d 1354, 1356-57 (11th Cir.1999) (so holding); Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.), 157 F.3d 414, 425 (5th Cir.1998) (same).[1] In contrast, this circuit, as well as the Third Circuit, has gone the other way. See In re Top Grade Sausage, Inc., 227 F.3d 123 (3d Cir.2000) (holding that debtors' attorneys remain eligible, even after the 1994 amendments, for award of compensation from bankruptcy estate for services rendered and expenses incurred); United States Trustee v. Garvey, Schubert & Barer (In re Century Cleaning Services, Inc.), 195 F.3d 1053 (9th Cir.1999) (same). See also In re Ames Dep't Stores, Inc., 76 F.3d 66, 72 (2d Cir.1996) (stating that the court was "inclined to agree" that debtor's attorneys were still eligible to receive compensation for their services and expenses after the passage of the Reform Act). Smith urges this panel to reconsider Century Cleaning, but he raises no argument that was not considered in Judge Thomas's vigorous dissent in Century Cleaning. This panel, of course, may not overrule a prior panel of this court, and if we could, Smith offers no persuasive reason why we should.
 
 
 36
 Smith also argues, somewhat more persuasively, that the bankruptcy court improperly applied In re Xebec, 147 B.R. 518 (9th Cir.BAP1992), in awarding fees to E & H and JPL because their preparation of fee applications and their defense of fee awards did not confer a benefit upon the bankruptcy estate.
 
 
 37
 In Xebec, the bankruptcy appellate panel held that a debtor's attorney can receive compensation for services rendered after a trustee has been appointed only if the debtor's attorney can demonstrate that the services have provided "identifiable, tangible and material benefit to the estate," thus adopting what is called the "benefit analysis" approach. Xebec, 147 B.R. at 523. In applying benefit analysis, the panel held that a bankruptcy court should examine: (1) whether the services duplicated services rendered by the trustee, (2) whether the services impeded or assisted the administration of the estate and (3) whether the debtor's attorney's actions were consistent with the debtor's duties under 11 U.S.C. § 521.[2] Id. Xebec interpreted an older version of section 330(a), a version in effect prior to amendment by the Reform Act. Now that much of Xebec has been codified in section 330(a)(4)(A), it is now that provision and not Xebec that governs whether a bankruptcy court may award compensation. See In re Top Sausage, 227 F.3d at 132(holding that debtor's attorney's fee application would be evaluated "pursuant to the standards set forth in § 330(a)(4)(A) and not by some heightened standard or hindsight").
 
 
 38
 As earlier noted, section 330(a)(4)(A) provides that:
 
 
 39
 Except as provided in subparagraph (B) [which involves chapter 12 and 13 cases], the court shall not allow compensation for —
 
 
 40
 (i) unnecessary duplication of services; or
 
 
 41
 (ii) services that were not —
 
 
 42
 (I) reasonably likely to benefit the debtor's estate; or
 
 
 43
 (II) necessary to the administration of the case.
 
 
 44
 11 U.S.C. § 330(a)(4)(A) (1994). Under this provision, a bankruptcy court cannot award fees if the services rendered were unnecessarily duplicative. Further, the bankruptcy court may not award compensation if the services rendered were not reasonably likely to benefit the estate or were unnecessary for the administration of the estate. Therefore, under section 330(a)(4)(A), a bankruptcy court may award compensation if the services rendered were not unnecessarily duplicative and if the services rendered were both reasonably likely to benefit the debtor's estate and were necessary for the administration of the case.
 
 
 45
 Section 330(a)(4)(A) differs from the benefit analysis of Xebec in three ways. First, except for fee awards in Chapter 12 and 13 cases, the new provision applies to all awards of reasonable compensation. Unlike Xebec, section 330(a)(4)(A) makes no distinction between compensation for services rendered before or services rendered after a trustee has been appointed. Cf. Xebec, 147 B.R. at 523(noting that "there is a split in the case law on the issue of whether the debtor's attorney may be compensated for services rendered after the appointment of a Chapter 11 trustee" and applying benefit analysis to awards of compensation). A fee application seeking compensation for legal work done after a trustee has been appointed, however, does requires more scrutiny by the bankruptcy court because such work may be unnecessarily duplicative of work done by the trustee. Second, section 330(a)(4)(A) does not expressly require the debtor's attorney's actions to be "consistent with the debtor's duties under 11 U.S.C. § 521," although, if a debtor's attorney has taken actions that aid the debtor in complying with section 521, these actions usually also aid in the administration of the case. See Xebec, 147 B.R. at 523-24(stating that "services rendered by the debtor's attorney which comply with the debtor's duties under § 521 should be presumed to be reasonable [and] necessary, and therefore, compensable under § 330"). Finally, section 330(a)(4)(A) provides clarification by requiring only that the services rendered be "reasonably likely to benefit to the debtor's estate," 11 U.S.C. § 330(a)(4)(A)(ii)(I) (1994), and does not require that the services actually provide an "identifiable, tangible and material benefit to the [debtor's] estate," Xebec, 147 B.R. at 523. But see Xebec, 147 B.R. at 524 (stating that "we acknowledge that [] benefit analysis does not require that the services rendered by the debtor's attorney be successful in every circumstance"). Thus, services that are reasonably likely to provide an identifiable, tangible and material benefit to the debtor's estate can be compensated, even if they do not actually provide such a benefit (and as long as such services meet the other requirements of section 330(a)). Because section 330(a) provides the legal standard for evaluating all compensation awards to bankruptcy attorneys,[3] to the extent that Xebec may be inconsistent with section 330(a)(4)(A), Xebec has been superseded and is overruled.
 
 
 46
 Having established the analytical framework for attorney compensation, we turn to Smith's objections to the fee awards in the case before us.[4] We specially note that the Chapter 7 trustee has not joined in Smith's objections to the fee awards.
 
 
 47
 2. Fees to Edward & Hale, Ltd.
 
 
 48
 Smith opposes the award of fees to E & H for legal services performed after his case was converted to Chapter 7. These fees fall into three broad categories: (1) fees arising from E & H's preparation of its fee applications, (2) fees arising from E & H's defense to Smith's challenges of the fee awards and (3) fees for miscellaneous matters including case and asset administration and for opposing Smith's motion to disqualify Judge Jones.
 
 
 49
 The fees for miscellaneous matters can be affirmed because they constituted reasonable compensation for services that were not unnecessarily duplicative of services performed by the trustee or JPL, were reasonably likely to benefit the debtor's estate and were necessary for the administration of the case. For example, E & H and JPL both filed briefs opposing Smith's motion to recuse Judge Jones, but their briefs on this issue had minimal overlap. Thus, there was no unnecessary duplication of services. Further, resolution of the recusal motion was necessary for the administration of the case and provided a benefit to the debtor's estate. It is a benefit to the estate, that absent a ground for recusal, continuity of court supervision of the estate be maintained. All parties to a bankruptcy case benefit from avoiding wasteful duplication of scarce judicial resources, which necessarily accompanies the transfer of a case from the assigned judge, who is familiar with the case, to a new judge.[5]
 
 
 50
 Whether the other fees were justifiable may require a somewhat more complex analysis. Smith argues that E & H cannot be compensated for its preparation of fee applications because preparing and filing a fee application is a service that solely benefits the law firm and not the estate. Section 330(a), however, expressly contemplates compensation for preparation of fee applications. See 11 U.S.C. § 330(a)(6) ("Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application."). Smith also contends that since the work done to prepare (and defend) the fee application occurred after his case had been converted to Chapter 7 and a trustee was appointed, the work was not compensable because it solely benefitted the law firms involved. See In re Melp, Ltd., 179 B.R. 636, 640-41 (E.D.Mo.1995) (holding that, as a matter of law, work performed by debtor's attorney after operating trustee was appointed in no way benefits the estate and thus is not compensable under the benefit analysis articulated in Xebec). Melp, however, is not particularly helpful because it analyzed the pre 1994 version of section 330(a) and, as noted above, section 330(a) now provides the controlling analytical scheme for evaluating all fee awards.
 
 
 51
 Here, the preparation of fee applications was necessary for the administration of the case and provided a direct benefit to the estate because those services aided the trustee in determining the allocation of administrative fees. And E & H was entitled to administrative fees from the bankruptcy estate for services that E & H performed for Smith prior to the conversion of his case to a Chapter 7 case. Further, E & H's work on its fee applications was compensable because E & H's work was not an unnecessary duplication of services performed by the trustee or other officers. Finally, as noted above, section 330(a) expressly provides for the compensation for preparation of fee applications. Thus, the fee awards to E & H for preparing its fee application must be affirmed.
 
 
 52
 While section 330(a) expressly contemplates compensation for fee preparation, it does not mention compensation for other services associated with the preparation of fee applications, such as litigation in defense of fee applications. Section 330(a) does not, however, forbid compensation for those services as long as they meet all of the requirements of the section. Although the statute is silent on whether litigation of fee awards is compensable, we have previously addressed this issue. In Nucorp, we held that services related to the preparation of fee applications are "actual and necessary services" for the purposes of section 330(a). We also stated that time spent litigating fee awards should be compensable. See Nucorp, 764 F.2d at 660-61. Failure to grant fees for successfully defending challenges to an authorized fee application would dilute fee awards, in violation of section 330(a), and this would reduce the effective compensation of bankruptcy attorneys to levels below the compensation available to attorneys generally. Id. at 661.
 
 
 53
 While Nucorp suggests that time and expenses spent litigating a fee application may be compensated, in Boldt v. Crake (In re Riverside-Linden Investment Co.), 945 F.2d 320, 323 (9th Cir.1991), we rejected the per se award of administrative fees arising from litigation of a fee application. We distinguished Nucorp on the basis that "[u]nlike the presentation and preparation of the fee application itself, there is no statutory or Bankruptcy Rule requirement that attorneys for the debtor oppose objections [by other parties] to[their] fee application." Id. We were concerned that, under a per se rule awarding litigation expenses, attorneys would be encouraged to assert meritless fee requests because they could recover fees incurred in opposing objections to their meritless fee request. Id. However, we declined to adopt a rule rejecting an award of litigation fees based on this rationale. See id. ("We do not decide whether the litigation of a fee application under some other set of circumstances may be found necessary within the meaning of Section 330(a)."). Thus, to be compensated for the time and expenses spent litigating a fee application, the fee applicant must demonstrate that the services for which compensation is sought satisfy the requirements of section 330(a)(4)(A) and that its case exemplifies a "set of circumstances" where the time and expense incurred by the litigation is "necessary" within the meaning of section 330(a)(1). This should not be difficult in the present case — or perhaps in other similar cases.
 
 
 54
 Here, E & H has met both of its obligations. First, E & H's services satisfy section 330(a)(4)(A) because the services were necessary for the administration of the case and provided a benefit to the debtor's estate in determining the amount of the administrative fees that the estate owed to E & H for the state litigation work. E & H's services also were not duplicative of services performed by the trustee or other professionals.
 
 
 55
 Second, E & H showed that this case evinced a "set of circumstances" where litigation was "necessary." The fees awarded to E & H and JPL were part of the bankruptcy court's plan for compensating all attorneys involved in the case. After Daybreak was sold, Smith had sought, and the bankruptcy court had granted, an award of attorneys' fees to McKnight (his new bankruptcy attorney) to be paid from the proceeds of the sale of the painting.[6] The bankruptcy court granted the fee award, but it conditioned the grant of attorneys' fees to McKnight on the grant of fees to the other professionals involved. Thus, it could be argued that Smith agreed to pay the litigation expenses of E & H and JPL when he accepted the conditional grant of fees to McKnight. Further, E & H was successful in defending its fee applications through all appeals and JPL was mostly successful in its defense of its fee awards. Thus, unlike the situation in Riverside-Linden, the fee awards to E & H and JPL were meritorious and the fee applications were not filed merely to get litigation fees. Cf. Riverside-Linden, 945 F.2d at 323(holding that "the Bankruptcy Court's denial of fees for expenses incurred by E & H in unsuccessfully opposing their final fee application was not an abuse of discretion"). To deny E & H reasonable compensation for successfully defending its fee awards would dilute its compensation for "actual and necessary services." See Nucorp, 764 F.2d at 661. Finally, denying E & H and JPL fees for defending against Smith's objections, which the bankruptcy court found were "frivolous," would serve to encourage debtors to file meritless objections to fee applications. This case evinces one of the "sets of circumstances" where litigation of a fee application is "necessary" for the purposes of section 330(a). Thus, the fees awarded to E & H are affirmed.[7] Whether Nucorp or Riverside-Linden should have primary application in evaluating the merit of the claim depends on the circumstances and is largely a matter within the informed discretion of the bankruptcy court.
 
 
 56
 3. Fees to John Peter Lee, Ltd.
 
 
 57
 JPL was awarded fees for preparing its fee applications and for defending its fee awards. For the same reasons discussed in connection with E & H, we also affirm these fee awards. Similarly, JPL was awarded fees for miscellaneous matters, which included opposing Smith's motion to recuse Judge Jones and for seeking the conversion of the case to Chapter 7.[8] These fee awards are likewise affirmed for the reasons we applied to the application of E & H. In addition to these fee awards, the bankruptcy court awarded other fees to JPL. Smith challenges these fees, and we address his objections below.
 
 
 58
 a. Fees relating to JPL's defense of its sale of the Masseria Paintings.
 
 
 59
 JPL had prepared and submitted a fee application with supporting documentation (its "Proof of Claim") for its work as Chapter 11 counsel. During the hearing before the bankruptcy court on JPL's fee application, Smith challenged JPL's handling of the sale of the Masseria paintings, which was part of JPL's work for the estate. Smith now claims that JPL was awarded $23,000 for the time spent in defending its work on the sale of the Masseria paintings against Smith's challenge before the bankruptcy court. Smith argues that JPL's defense of its handling of the sale of the Masseria paintings was neither necessary nor did it provide tangible and material benefits to the estate. The bankruptcy court held that fees incurred by JPL to defend its handling of the sale of those paintings were indistinguishable from the fees generated by JPL in defense of all of its post-conversion claims for fees. The bankruptcy court also found that the work benefitted the estate. Under section 330(a)(6) and Nucorp, the preparation and defense of fee applications are actual and necessary services that may be compensated. Further, JPL's work was not unnecessarily duplicative. It also benefitted the estate and was necessary for the administration of the case in determining the scope of JPL's prior work for the estate. Thus, the award of these fees is affirmed.
 
 
 60
 b. Fees relating to JPL's Suit Against Smith for Abuse of Process.
 
 
 61
 JPL had sued Smith for abusing the appellate process in filing the various appeals from the fee awards. JPL was granted $22,333, which was one third of the total fees involved in the prosecution of the abuse of process suit. The bankruptcy court awarded this amount after applying Xebec. It carefully reviewed the evidence to determine what part of the adversarial proceedings solely benefitted JPL and excluded those services from the fee awards. Although Xebec may not be the correct standard to apply in determining attorney compensation, here, by satisfying Xebec the bankruptcy court effectively satisfied the standard of section 330(a)(4)(A). JPL's work was not unnecessarily duplicative and the bankruptcy court found that it benefitted the estate and aided in the administration of the case. Although not beyond all doubt, the bankruptcy court did not abuse its discretion in granting this fee award.
 
 
 62
 c. Fees relating to JPL's Opposition to Smith's Efforts to Obtain Smith's Files.
 
 
 63
 After JPL withdrew its representation of Smith, he sought to recover his files from JPL to prepare malpractice claims against JPL. JPL refused to return them. The bankruptcy court ordered JPL to release the files to Smith. However, it awarded JPL $4,500, which was calculated as half of the total fees and expenses incurred by JPL in reviewing documents to determine which files belonged to Smith and in copying and transferring those files to Smith. The bankruptcy court did not award JPL fees for time spent in opposing Smith's motion before the court. The fees that were awarded were also supportable under section 330(a)(4)(A) because they were not unnecessarily duplicative, were reasonably likely to benefit the estate and aided in the administration of the case. This dispute over files can also be viewed as an extension of the fee dispute between Smith and JPL since Smith required his files to prepare the malpractice suit. To the extent that the services of JPL did not relate to the dispute, the bankruptcy court reduced the fees accordingly. Thus, the bankruptcy court did not abuse its discretion in granting this fee award.
 
 
 64
 d. Fees relating to JPL's Defense of Smith's Malpractice Claims Against JPL.
 
 
 65
 After he recovered his files, Smith filed a motion to compel the Chapter 7 trustee to file a malpractice suit against JPL. The motion was filed in bankruptcy court because the malpractice suit was a potential asset of the bankruptcy estate. The bankruptcy court ruled against Smith; it determined that the proposed malpractice suit would merely be an extension of the fee dispute between Smith and JPL. Smith appealed this decision, and a Bankruptcy Appellate Panel affirmed. Subsequently, JPL was awarded $50,000 in fees for defending against the malpractice suit. Since we have concluded earlier that awards relating to a fee dispute are compensable under section 330(a)(4)(A) and our earlier caselaw, there was no abuse of discretion in awarding these fees because they were for work that was part of the ongoing fee litigation between Smith and JPL.
 
 B. Motion to Recuse
 
 66
 Smith argues that Judge Jones erred in failing to recuse himself after he allegedly admitted that he was biased against Smith. Smith seeks to have the entire bankruptcy proceeding (including the conversion of his case and the sale of Daybreak) voided and a new bankruptcy judge appointed to adjudicate his case.
 
 
 67
 Smith's proffered evidence of Judge Jones's alleged bias consists of statements concerning a settlement agreement made by Judge Jones at two hearings as well as some adverse judicial rulings. Thus, at a hearing held on February 23, 1999, Judge Jones stated:
 
 
 68
 From the very get-go, from the very outset and over the course of many, many hearings, this Court had the clear understanding that the issue of Mr. Smith's interest, whether he had a right to any part of Mitzi Briggs's share and whether he had any right to bring anything, in her name or for those assets would be determined in State Court.[9]
 
 
 69
 Similarly, at an April 9, 1999 hearing, Judge Jones, again speaking of the settlement agreement, stated that he had consistently taken the position that the community property claim had to be tried in state court.[10]
 
 
 70
 Finally, Smith points to instances of alleged partiality where Judge Jones ruled against him on evidentiary and procedural motions. Smith also points to Judge Jones's alleged bias in finding that some of Smith's appeals, as well as the litigation against JPL, was frivolous. Since these latter alleged instances of bias, however, were not the bases of the recusal motion, we need not consider them here.
 
 
 71
 Before reaching the merits of this issue, two procedural matters need to be addressed. First, arguments have been made that the appeal is premature. "The decision of a bankruptcy judge not to disqualify himself ... cannot be appealed until a direct appeal is taken from a final decision adverse to the moving party." Stewart Enter., Inc. v. Horton (In re Horton), 621 F.2d 968, 970 (9th Cir.1980). Here, Smith has already appealed final decisions allegedly affected by bias, including the orders approving the settlement agreement with modifications and converting his Chapter 11 case to a Chapter 7. However, no appeal could have been taken then from a bias ruling that has only now been made. Therefore, Smith may appeal now, at this his first opportunity, from the denial of his recusal motion. Further, this is the final direct appeal taken from a final decision adverse to the moving party (with respect to disqualification), and the interlocutory decision rejecting the disqualification motion is now appealable.
 
 
 72
 Second, the bankruptcy court held that Smith did not file his recusal motion timely and that it could be rejected for that reason. It may be true that Smith should have filed or included his recusal motion in prior proceedings, especially if he had made earlier allegations of bias. Smith had notice of the adverse rulings for a long time and it seems improbable that Smith did not know of purported indications of Judge Jones's alleged bias for many years. But Smith argues to the contrary in that he based his motion on Judge Jones's comments at the February and April 1999 hearings, which he alleged were the first indications that he had of Judge Jones's bias against him. The issue of timeliness is not actually one we have to decide. In proceeding to the merits of the motion, we will grant the benefit of the doubt to Smith that he was unaware of any prior evidence of judicial bias, and assume that Smith filed his recusal motion timely.
 
 
 73
 Smith argues that the district court improperly sustained the bankruptcy court's decision to deny his motion for recusal. The district court analyzed whether Judge Jones should have recused himself pursuant to 28 U.S.C. § 144. This was incorrect since section 144 applies only to district court judges and not to bankruptcy court judges. See 28 U.S.C. § 144 (1994); Seidel v. Durkin (In re Goodwin), 194 B.R. 214, 221(9th Cir.BAP 1996). Rather, bankruptcy court judges are subject to recusal only under 28 U.S.C. § 455. See Bankr.R. 5004(a) (1987); Goodwin, 194 B.R. at 221.
 
 Section 455 states in relevant part:
 
 74
 (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
 
 
 75
 28 U.S.C. § 455(a) (1988).
 
 
 76
 In Liteky v. United States, 510 U.S. 540, 554, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Supreme Court held that the "extrajudicial source" doctrine applies to all of section 455. In explaining the doctrine, the Supreme Court noted that:
 
 
 77
 First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.
 
 
 78
 Id. at 555, 114 S.Ct. 1147 (emphasis added). The Court went on to state that the expression of some opinions may support a bias or partiality challenge "if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id.
 
 
 79
 Smith reads Liteky to support the proposition that a judge should recuse himself if: (1) the judge's predisposition was formed in a separate proceeding (which he equates with an extrajudicial source) or (2) if the judge's predisposition (whether extrajudicial or intrajudicial) displays a deep-seated favoritism or antagonism that would make fair judgment impossible. This is an incorrect reading of Liteky.
 
 
 80
 First, Liteky stated that an opinion derived by a judge from an extrajudicial source is not in itself a sufficient condition for a "bias or prejudice" recusal. Liteky, 510 U.S. at 554, 114 S.Ct. 1147. Second, the alleged predisposition in this case was formed during a prior related proceeding, and the Supreme Court requires that for such a predisposition to be a basis for recusal, it must evince a "deep-seated and unequivocal favoritism or antagonism that would make fair judgment impossible." Id. at 555, 114 S.Ct. 1147. Therefore, the district court was correct in holding that Smith "can only succeed [in] his claim if Judge Jones's opinions display `a deep-seated favoritism or antagonism.'" Here, Smith has not presented sufficient evidence to meet his burden.
 
 
 81
 First, the alleged statements of Judge Jones indicate, at most, that he was disposed to approving the settlement with modifications because he believed that the community property claim, based upon Mitzi Briggs's property claim, should be resolved in state court instead of federal court. There is no indication from Judge Jones's statements that his disposition was fixed from the outset. Rather, the statements suggest that in researching the legal issues relating to the agreement, Judge Jones came to have an inclination — i.e., the "clear understanding" — that the community property issue should be resolved by the state court. Over the course of the many hearings, and after listening to many arguments, Judge Jones was not persuaded that his inclination was wrong. During the evidentiary hearing on remand, his disposition had become very strong because of the arguments made at the earlier hearing, but there is insufficient evidence to indicate that it was impossible for Judge Jones to change his mind. Even in light of the adverse judicial rulings cited by Smith, there is no evidence that Judge Jones had such deep-seated antagonism or favoritism as to render a fair judgment impossible. The main thrust of Smith's arguments seems to be that Judge Jones made up his mind early and did not change it in the face of subsequent hearings and other proceedings. This is not a ground for recusal. Even if Judge Jones clung to his opinion, a little stubbornness is not ordinarily grounds for disqualification. Thus, the district court did not err in affirming Judge Jones's denial of Smith's motion to recuse.
 
 III.
 
 82
 For the foregoing reasons, the judgments of the district courts are AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard D. Cudahy, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Attorneys for a Chapter 11 debtor can still be paid under the Fifth and Eleventh Circuit's approach since they would presumably be "professional persons" employed by a trustee under section 327 if they were retained by a debtor-in-possession in a Chapter 11 case. The reason for this is that a debtor-in-possession has all of the rights and powers of a trustee, see 11 U.S.C. § 1107(a), which includes the power to employ professional persons under section 327. Once atrustee has been appointed, however, such attorneys, in the Fifth and Eleventh Circuits, would not be compensated even if they provided an identifiable, tangible and material benefit to the estate. See, e.g., In re Canton Jubilee, Inc., 253 B.R. 770, 779 (Bankr.E.D.Tex.2000) (so holding).
 
 
 [2]
 11 U.S.C. § 521 requires a debtor to file a schedule listing claims and assets of the bankruptcy estate, and, where a Trustee is appointed, to aid the Trustee in administering the bankruptcy estate
 
 
 [3]
 Because it is not relevant to this appeal, we do not address section 330(a)(3), which lists the nonexclusive factors that a bankruptcy court must examine to ensure that the award of compensation is reasonable, and sections 326 and 328, which impose limitations on the compensation of trustees and professional persons
 
 
 [4]
 The district court addressed some of the fee awards under the pre 1994 version of section 330(a) because the bankruptcy case here was filed in 1991. We believe that the 1994 version of section 330(a) should apply because the case was converted to Chapter 7 in 1995. The fee awards that Smith is appealing were for services rendered after the case was converted. In any case, the result under the pre 1994 version of section 330(a) and our earlier caselaw would be the same
 
 
 [5]
 In this case, if Smith had succeed on his motion, almost the entire proceeding would have to be nullified and the case would have had to be reheard by a new judge. This would have imposed additional costs and expenses that would have reduced the bankruptcy estate
 
 
 [6]
 Smith had to seek approval from the bankruptcy court to pay his attorney because the bankrupt had not been discharged. Thus, the monies from the sale ofDaybreak, which was used to pay the various fee awards, were not Smith's property to spend as he wished (for example, in pursuit of appeals), but remained the property of the bankruptcy estate and were thus subject to the claims of Smith's creditors, which included E & H and JPL.
 
 
 [7]
 Smith also objects to the fee awards to E & H on the basis that Shea & Carlyon, and not E & H, defended the fee awards for work done by E & H in the state litigation. This argument borders on the frivolous since Smith does not allege that Shea & Carlyon is duplicating work done by E & H on the fee litigation or that Shea & Carlyon's fees were excessive. As long as the fee awards are reasonable compensation for services rendered that were necessary and which satisfy section 330(a)(4)(A), it does not matter whether they were rendered by E & H or by its agent. Thus, the bankruptcy court did not abuse its discretion in granting litigation fees to E & H even though E & H hired an outside firm to do the work
 
 
 [8]
 Smith objected to certain of the fees for miscellaneous work because the documentation in support of the fees listed the work under such ambiguous terms as "review of documents" and "research of legal issues."See In re Ginji, 117 B.R. 983 (Bankr.D.Nev. 1990) (holding that work described in vague terms may be summarily denied). A review of the documentation persuades us that JPL sufficiently detailed the work it performed for debtor's estate. Thus, the bankruptcy court did not err in awarding the fees for the miscellaneous work.
 
 
 [9]
 Judge Jones went on to state that:
 So any statements by Ms. Allf to the contrary, would have been — and was from time-to-time when she raised it and then appealed the issue as to the meaning of the addendum and the meaning of the agreement, this Court met her argument, on behalf of the debtor, with incredulity and I ask your forgiveness for that statement, but that's just plain fact.
 It was always this Court's mind, plain and simple, that that issue would be determined in State Court. And any argument to the contrary, that somehow in the agreement, Mitzi Briggs — in the agreement itself, to resolve these matters in Bankruptcy Court, had assigned the community interest in this Court. In the agreement in this Court. I just did — simply did not accept.
 
 
 [10]
 Judge Jones made the following statements:
 [C]onsistently throughout the hearings I took the strong position against Ms. Allf that that was clearly not the intent of the Court ... nor the intent of the parties, and I insisted that the matter was supposed to be heard and tried in state court as to the community property interest, and there's just no way that the agreement could be interpreted to mean that you were resolving it by stipulation as opposed to trial in the state court.